## INTERSTATE COMMERCE COMMISSION v. DETROIT, G. H. & M. RY. CO.

### (Circuit Court, W. D. Michigan, S. D.   October 6, 1893.)

1. CARRIERS—INTERSTATE COMMERCE COMMISSION—WHO MAY COMPLAIN.

   It is no objection to the enforcement by the court of an order made against a railway company by the interstate commerce commission, that the complainants before the commission have no real grievance, but are instigated by a competing railroad, as section 13 of the interstate commerce act expressly provides that no complaint shall be dismissed by the commission because of the absence of direct damage to the complainant, and as the commission has power, of its own motion, to institute investigations, make orders, and apply to the courts for their enforcement.

2. SAME—INTERSTATE COMMERCE ACT—VIOLATION—FREE CARTAGE.

   Free cartage by a railroad company, of goods shipped from without the state, from its station in Grand Rapids, Mich., to the business section thereof, an average distance of one and one-quarter miles, for delivery to the consignees, is a violation of the long and short haul clause of the interstate commerce act, (section 4,) where it appears that the same freight rates are charged to merchants of the city of Ionia, through which the railroad passes to reach Grand Rapids, but where such merchants are obliged to cart their goods from the railway station to their storehouses at their own expense. Severens, District Judge, dissenting.

3. SAME—"SIMILAR CIRCUMSTANCES AND CONDITIONS."

   The grouping together by the railroad company of Ionia and Grand Rapids as stations to which freight rates from eastern cities may properly be made the same is a conclusive admission by the company that, so far as transportation from the east to the warehouses of the company at the two places is concerned, it is under substantially similar circumstances and conditions. Severens, District Judge, dissenting.

4. SAME—JUSTIFICATION BY CARRIER.

   Such free cartage is not justified by the fact that competitors of the defendant company have stations at Grand Rapids in the business center, thus placing defendant at a disadvantage.

5. SAME.

   Neither is the discrimination in rates justified by the fact that Grand Rapids is a much larger place than Ionia, and that the greater amount of business of the company with the larger place enables it to do carting more cheaply there than at the smaller place. Severens, District Judge, dissenting.

In Equity.   Petition by the Interstate Commerce Commission for the enforcement of an order made against the Detroit, Grand Haven & Milwaukee Railway Company.   Relief granted.

Statement by TAFT, Circuit Judge:

This was a bill in equity, exhibited by the interstate commerce commission, averring that the Detroit, Grand Haven & Milwaukee Railway Company, a common carrier corporation subject to the provisions of the interstate commerce law, had been duly impleaded in a controversy before the interstate commerce commission upon the petition of Mary O. Stone and Thomas Carten, residing at the city of Ionia, Mich., wherein it was made to appear to the satisfaction of the commission that the said defendant had violated the provisions of the interstate commerce law as alleged; that the commission had formulated an order and notice in relation to the matters charged in the petition, based upon findings and determinations of the commission with respect thereto, which order was still in force, but which the defendant refused to obey; wherefore the commission prayed for an injunction, mandatory or otherwise, to restrain the defendant, its officers, servants, and attorneys, from further continuing in their violations of and disobedi-

ence to the order of the commission. The facts found by the commission were as follows:

"(1) The complainants are copartners doing business under the firm name of Stone & Carten, and are engaged in the sale at retail of goods, wares, and merchandise in the city of Ionia, county of Ionia, and state of Michigan, purchasing said goods, wares, and merchandise at Philadelphia, Pa., New York, N. Y., Boston, Mass., and points east of Detroit, Mich.

"(2) That the respondent railway company is a corporation existing under and pursuant to the laws of the state of Michigan, and is a common carrier of passengers and property for hire between the city of Detroit and the city of Grand Haven, both of said places and its entire line of railway being in the state of Michigan; that it does not own and control a line of steamboats plying across Lake Michigan, between Grand Haven and Milwaukee, Wis., but there is a line of steamboats engaged in the transportation of persons and property across Lake Michigan, between Grand Haven and Milwaukee, from which the respondent received traffic consigned over its road from Milwaukee, and to which it delivers traffic from its road, destined to Milwaukee; that all of said boats are under the direction and control of an independent corporation, organized under the laws of the state of Michigan, by the name of the Grand Haven & Milwaukee Transportation Company; that the management of the business of the last-named company is under the management and control of the same officers as those which manage and control the road and business of the respondent.

"(3) The respondent, for its services as a common carrier for continuous shipment, under a common arrangement, of property from Detroit to its stations on its line of transportation, established and published a schedule or rates and charges, which makes on all freights from Philadelphia, New York, and Boston, and all other points east of Detroit, consigned over the respondent's road, the same rates and charges for the complainants which are made and charged for the same class of freights to the merchants doing business at the city of Grand Rapids, a copy of which schedule is hereto annexed, and deemed a part hereof.

"(4) The shipments of freight from Philadelphia, New York, Boston, and points east of Detroit, which are delivered to complainant's road at said city of Detroit, and transported by it over its line of railway, pass through the city of Ionia before reaching the city of Grand Rapids; that it is a shorter distance from Detroit to Ionia than from Detroit to Grand Rapids, and over the same line, in the same direction, the shorter being included in the longer distance.

"(5) That the respondent provides, at its own expense, drays, carts, and trucks at the city of Grand Rapids for the service of transporting merchandise and freights generally, as well as merchandise and freight consigned from Philadelphia, New York, Boston, and points east of Detroit, between its station at Grand Rapids and the places of business of merchants, traders, and other patrons of its road at that place, which service it performs without additional charge to the owner or shipper of property on account thereof; that this service is not furnished to complainants or other merchants, traders, and patrons of its road at the city of Ionia; that this service at Grand Rapids has been openly and notoriously rendered for a long period of time, to wit, for 25 years and upwards; that its station at the said city of Grand Rapids is within the corporate limits thereof, and is on an average one and a quarter miles from the business sections of said city where the traffic of the places tributary to respondent's road originates and terminates, while respondent's station for receiving and discharging freight and property at the city of Ionia is not to exceed an eighth of a mile from the business center of said city; that at the city of Grand Rapids there are two other railroads,—the Michigan Central Railroad and the Grand Rapids, Lansing & Detroit Railroad,—both of which are immediately and directly in competition with respondent's road for the business of Grand Rapids; that the stations of both of said roads for receiving and discharging freight and property at Grand Rapids are near the business center of said city, requiring only short hauls to and from their stations,—on an average about one-quarter of a mile; that the respondent did the carting of

freight to and from its station at Grand Rapids substantially in the same manner as at present, long prior to the time when either said Michigan Central or Grand Rapids, Lansing & Detroit Railroads were constructed to that place.

"(6) That the actual cost of carting or draying freight from the respondent's warehouse in the city of Ionia to the several places in said city of Ionia to and from which traffic has to be hauled is two cents per hundredweight; that the cost of carting or draying freight transported over respondent's line to and from the places of business of the merchants, traders, and other patrons of its road at Grand Rapids is two cents per hundredweight.

"(7) That there is but slight competition encountered by the complainants and other persons, firms, and corporations engaged in business at the city of Ionia. interested in shipping over respondent's road, with similar business at the city of Grand Rapids.

"(8)   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

"(9) The complainants have not brought any suit for the recovery of money or damages for which the respondent is alleged to be liable under the provisions of the act to regulate commerce, but have elected to adopt this procedure as the sole means of obtaining relief.

"(10) The city of Grand Rapids has a population of about 70,000. The city of Ionia has a population of about 6,000. The freight traffic to and from Grand Rapids by all roads in 1887 amounted to 982,685 tons. The freight traffic to and from Ionia by all roads for the same time amounted to about 55,000 tons.

"(11) Cartage by railway companies in a similar manner to that at Grand Rapids is conducted by other railway companies at exceptional stations in the state of Michigan, and more or less extensively practiced by companies in other states at exceptional stations."

On this statement of facts, a majority of the commission, the chairman, Judge Cooley, and Commissioners Morrison and Schoonmaker, held that the cartage at Grand Rapids was a violation of the long and short haul clause of the fourth section of the act to regulate commerce, because its result was that the merchants at Grand Rapids obtained transportation of freight from Boston, New York, and Philadelphia at two cents a hundred less than the merchants of Ionia, the free cartage at Grand Rapids being in effect a payment in money's worth to the merchants at Grand Rapids of two cents a hundred. Commissioners Morrison and Schoonmaker also held that the free cartage was unlawful on the further ground that it was in effect a device for receiving less than the established tariff rate from and to that point,—that it was a rebate, in violation of the second section of the act.

The answer of the defendant to the bill herein admitted the averment of the findings of fact embodied in the opinion of the interstate commerce commission, and averred that it had been the practice of railway companies engaged in interstate commerce to do free cartage as a means of obtaining traffic at exceptional stations on the lines of the railroads where the business was of sufficient magnitude to warrant the carrier in incurring the expense, and that such expense was deemed to be legitimate as a means of securing traffic for the railroad, and of affording increased facilities and dispatch for doing its business; that on every railroad in Michigan and in the United States there were tracks constructed by the railway company, at its own expense, at exceptional stations on the line of road, leading from the main track of the road to private business establishments, which were used solely for delivering and receiving freight in the business between such private business establishments and the railway and without any charge being made by the railway company therefor, though there were private business establishments at the same stations of the railroad not furnished with these advantages in connection with such traffic; that such practice did not infringe any provision of the interstate commerce law, and yet it involved quite as clear an element of discrimination as the cartage system at Grand Rapids; that the practice of freight cartage was originally adopted because it was less expensive than would be a change of its line so as to bring it into nearer proximity to the business center of the city, or the construction and operation of spur tracks from the main line of road into the

business center, where the main line tracks of its competitors, the Michigan Central and the Detroit, Lansing & Northern Railroad Companies, were laid in said city; that the free cartage had the additional advantage of enabling the carrier to promptly clear the freight buildings of traffic, and prevent its burdensome and expensive accumulation, and that it secured a method and order in the delivery of its traffic from its buildings, and that it also saved the expense of sending notice to the consignees of the arrival of freight; that the free cartage at Grand Rapids was an absolute condition of the respondent's procuring for its road any considerable part of the freight traffic of the city; that the two cents a hundred pounds paid for cartage at the city of Grand Rapids by respondent was not paid alone for the cartage, but included the services of the cartage agents, acting in behalf of respondent, in soliciting freight traffic for its road and collecting bills for freight charges; that the value of these services, aside from the mere matter of carting the freight, was not less than one-third the sum which respondent paid.

Wherefore the defendant submitted that, in view of all these considerations, the free cartage was not an undue or unreasonable preference or advantage to said city of Grand Rapids as against the city of Ionia, and was not in conflict with the long and short haul clause of the law.

L. G. Palmer, Dist. Atty., and J. B. McMahon, (Ashley Pond, of counsel,) for complainant.

E. W. Meddaugh, (Otto Kirchner, of counsel,) for defendant.

TAFT, Circuit Judge, (after stating the facts.) The first objection made by defendant to granting the relief asked is that the complainants before the commission, Stone & Carten, had no real grievance, but were instigated to their prosecution by a competitor of the defendant, the Michigan Central Railway, which is paying the expenses of the litigation. This objection is not founded on any finding of the commission, but on an admission of counsel for the complainants below before the commission, and is referred to in the dissenting opinion of Mr. Commissioner Bragg. Were this a mere private action by private litigants, the objection, if founded on anything in the record, (as this does not seem to be,) might have weight, but under the provisions of the interstate commerce law we are not permitted to entertain it. The act by section 13 provides for the lodging by any person of complaints with the commission of a common carrier's violations of the law, and expressly enjoins upon the commission "that no complaint shall at any time be dismissed because of the absence of direct damage to the complainant." Moreover, the same section provides that "said commission * * * may institute any inquiry on its own motion in the same manner and to the same effect as though complaint had been made." By section 15 of the act the commission is required, in any case where investigation has been made by it, if the law has been violated, to notify the common carrier to cease from further violation, and by section 16, in case of the refusal of the common carrier to obey, it becomes the duty of the commission to apply by petition to a circuit court in equity to enforce its order and restrain the further violation of law by the carrier. It is obvious from these provisions that when the case reaches the circuit court on petition of the commission, it is the complaint of the commission which gives the court jurisdiction, and that the

bona fides of the complaint cannot be attacked by impeaching the good faith of those who, in the first instance, induced the commission to take action.

Although the question was made in the original answer before the commission, it is not seriously disputed here that the defendant is a common carrier, subject to the provisions of the interstate commerce law. The question at issue is whether the practice of free cartage at Grand Rapids is, with reference to the shippers at Ionia, a violation of the following sections of the interstate commerce law:

"Sec. 2. That if any common carrier subject to the provisions of this act shall, directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect or receive from any person or persons a greater or less compensation for any service rendered, or to be rendered, in the transportation of passengers or property, subject to the provisions of this act, than it charges, demands, collects or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared to be unlawful.

"Sec. 3. That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

"Sec. 4. That it shall be unlawful for any common carrier subject to the provisions of this act to charge or receive any greater compensation in the aggregate for the transportation of passengers or a like kind of property, under substantially similar circumstances and conditions, for a shorter than for a longer distance over the same line, in the same direction, the shorter being included within the longer distance: but this shall not be construed as authorizing any common carrier within the terms of this act to charge and receive as great compensation for a shorter as for a longer distance: provided, however, that upon application to the commission appointed under the provisions of this act, such common carrier may, in special cases, after investigation by the commission, be authorized to charge less for longer than for shorter distances for the transportation of passengers or property: that the commission may from time to time prescribe the extent to which such designated common carrier may be relieved from the operation of this section of this act."

It is conceded that the contract of carriage of a railway common carrier, as usually understood, is the transportation of the goods from the warehouse of the railway at the point of shipment to the railway warehouse at the point of destination. Generally the cartage from the railway warehouse to the storehouse of the consignee is paid by him. If the railway company pays it, the expense of transporting the goods to the place where he can use them is lessened by the cost of cartage. This is generally exactly equivalent to the railway company's reducing the freight by as much as the cartage would cost the consignee. Now, it is admitted that this latter would be a violation of the long and short haul clause if the reduction were made at Grand Rapids, and not at Ionia. Why should not its exact equivalent—the furnishing of free cartage—be also a violation? It is said that it is not, because the

transportation to Ionia and that to Grand Rapids are not under substantially similar circumstances and conditions. In accordance with a practice which has been approved by the interstate commerce commission, (Imperial Coal Co. v. Pittsburgh & L. E. R. Co., 2 Inter St. Commerce Com. R. 618,) Ionia and Grand Rapids are grouped together by the defendant company as stations to which the freight rates from the far east, Boston, New York, and Philadelphia, may properly be made the same. This is a conclusive admission by the defendant that, so far as the transportation from the east to the warehouses of the company at the two places is concerned, it is under substantially similar circumstances and conditions. The question remains whether the conditions existing with reference to the delivery of goods from the warehouses to the storehouses of the consignees are such as to warrant a full charge for the same at Ionia, and no charge at all at Grand Rapids. If not, then the free cartage at Grand Rapids is, in fact, a reduction in the cost of transportation to Grand Rapids, and illegal. We do not see how this result can be escaped. The reasoning is said to be mathematical, but that is a term not ordinarily used to describe defective reasoning. Any benefit in relation to the shipment of goods, having a definite money value, conferred gratis by the carrier upon one shipper which is not conferred upon another, when the service to each is admittedly under substantially similar circumstances and conditions, is an undue reduction in the price of carriage to the former, and is illegal. If this were not true, then the provision against undue discrimination, of which the long and short haul inhibition is only one instance, would be a dead letter.

It may be admitted that the terminal facilities may be varied at different stations without causing undue discrimination, provided such a variation is not such a departure from the usual facilities as to make it an obvious reduction in the cost of transportation to the shipper. It is very clear that free cartage is exceptional, and that it is a departure from the usual terminal facilities furnished either at large or small cities and towns. Of course it would not be a discrimination that could be complained of, that one company puts its station at one town nearer the business center than another, and, if free cartage could be said to properly make up for the greater distance of defendant's station from the business center of Grand Rapids, and in this respect to put Grand Rapids merchants on the same footing as Ionia merchants with their proximity to the station, then it would seem to be unobjectionable, because justified by the dissimilar circumstances. But can this be said? We think not. If at Grand Rapids the defendant's station were moved into the business center, the consignees would still have to pay for the cartage. It may be that it would be for a less price, but still they would have to pay. The equalizing of the conditions between the two places in this respect would be complete by a charge for cartage by the railway company at the lower rate which would be charged for cartage were the station in the city. Free cartage from defendant's station at Grand Rapids con-

fers on the shippers' a benefit of a definite money value over and above that usually included in a transportation tariff, equal to the cost of cartage from a station in the center of the city.

What has been said with reference to the difference between the distance of the station at Grand Rapids from the business center and that of the station at Ionia has equal application to the contention of the defendant that the free cartage is justified by the fact that the competitors of the defendant have their stations at Grand Rapids in the business center, and that this places defendant at a disadvantage, which creates a dissimilar condition. Even if competition under such circumstances can produce dissimilarity of conditions, the extent of the discrimination founded thereon must be commensurate with and limited to the dissimilarity. It will fully equalize the conditions if the defendant furnishes cartage for a mile and a quarter at a price equal to that at which cartage for a quarter of a mile could be furnished without loss. To do more is to bid for competition by reducing the cost of transportation, and this cannot be done except by proportionately reducing the rates at Ionia also.

But it is said that Grand Rapids is a much larger place than Ionia, and therefore a carrier may confer favors on a shipper at the former place. In so far as the greater amount of business enables the railway company to do carting at a cheaper rate at Grand Rapids than at Ionia, by so much may the carrier reduce the cartage cost to the shipper at the former place, because this is a legitimate and actual dissimilarity in conditions between the two places; but cartage at Grand Rapids must cost something, and free cartage, therefore, confers on the shipper a benefit which dissimilarity of conditions does not justify.

The chief argument for the defendant is based on the custom among railroads to furnish those of their customers whose storehouses are convenient to the railway track with switch tracks, so that upon these tracks consignments in car loads are delivered at the door of the consignee. If free cartage is to be prohibited, it is said that the same principle must prevent the use of switch tracks for such a purpose, because this is a benefit to certain customers of a similar character not enjoyed by others. We do not think the cases are parallel. The providing of a switch track depends on two things: First, the proximity of the consignee's storehouse; and, second, business of a character to require or permit consignments in car load lots. The first of these conditions, and perhaps the second, entitles the customer to a lawful discrimination in his favor. The favorable location of his storehouse with respect to the track is an advantage which he may rightly improve, and it may be that the wholesale character of his business is another element which may justify a discrimination in his favor over smaller shippers. Interstate Commerce Commission v. Baltimore & Ohio R. Co., 145 U. S. 263, 12 Sup. Ct. Rep. 844. If a case were presented where a merchant at Ionia, with his storehouse convenient to the track of the defendant, had been refused a switch track and delivery thereon of merchandise in car load lots, when

such a benefit was conferred on merchants at Grand Rapids, not differently situated, a question might then arise similar to that at the bar, but it is not presented by a discrimination between merchants with storehouses far from the railroad track, or who receive consignments of small bulk, and those who are near the track and receive car load lots. Even if it be conceded that a construction of the interstate commerce law which would prohibit so general a practice as the delivery of consignments on private switch tracks must be erroneous, the prohibition of free cartage does not involve any such result. In order that a railway may reach many customers, it sometimes builds a belt railroad. This is a mere extension of its track, and, if the business to be obtained thereby will justify, there is no more objection to it as undue discrimination than there would be to the building of a branch road, or the delivery of goods from several warehouses. It is part of the railroad business, and the means of delivery is by railroad. Cartage is not usual railroad business, but is something not usually undertaken by them. The free cartage, as furnished at Grand Rapids by the respondent, is as foreign to ordinary freight business as it would be for the company to do the packing for shippers free of cost.

For the reasons given the prayer of the petition must be granted, and a decree entered accordingly.

SEVERENS, District Judge, (dissenting.) The finding of facts by the commission is adopted for the purposes of this opinion, together with some further facts not inconsistent therewith, proven by the testimony, or of which judicial notice is taken.

It is a legitimate rule in the construction of language employed in statutes that attention should be given to results which will follow from a proposed interpretation, and if those results are contrary to the general purpose and object of the act, and are plainly seen to be such as were not intended, it should be rejected, unless the terms employed are too rigid to bear some other interpretation in harmony with the general policy of the law. The object sought to be attained is the guiding light always, and in the construction of this statute, couched as it is broad and general language, it should be kept constantly in sight. For reasons presently to be stated, it appears to me that the conclusions of the commission, and the order founded thereon, are productive of results quite different from those intended. The general purpose of the interstate commerce act was to prevent the practice of extortion by common carriers in the transportation of freight and passengers between the states by the imposition of unjust and unreasonable rates. This is well known as matter of history, and the courts take judicial notice of it. The law was passed for the protection of the public, and not for the benefit, or to redress any grievance, of common carriers. They were known to be able to take care of themselves. And the closing paragraph of the first section sounds the keynote to the whole act when it says that "every unjust and unreasonable charge for such service is prohibited and declared to be unlawful."

And this suggests a question somewhat preliminary in its nature,

concerning the purpose of the proceeding, and the province and duty of the court in dealing with it, which appears to me to deserve consideration. The act provides by the thirteenth section that any person, corporation, or association, or any body politic, may make complaint to the commission for any violation by a common carrier of its provisions. Notice is thereupon required to be given by the commission to the carrier of the charges preferred, and it is called upon to satisfy the complaint, or give its reason for refusal. If the carrier makes reparation for the injury complained of, it is relieved from all liability to the complainant for the particular violation complained of. If this is not done, or if there shall be reasonable ground for investigating the subject of complaint, it is the duty of the commission to investigate it. The commission may also institute an inquiry upon its own motion in the same manner and to the same effect as though complaint had been made. In the latter case it is clearly implied, as well from the language of the act as from the nature of the proceeding, that any order it may make as the result of its inquiry must be upon notice of the particular violation which is charged against the carrier. However the proceeding may be commenced, the commission is required by the fourteenth section, if it makes investigation, to make report of the facts found by it, and its conclusions thereon, and its recommendation in respect to the reparation which should be made to any injured party, if there be such. By the fifteenth section, if the commission finds the charges to have been sustained, it is required to give a copy of its report to the carrier, together with a notice that it desist from the violation charged, and make the reparation it has recommended to be made to any injured party. If the carrier complies with this notice, it is thereupon relieved from any further liability or penalty for such particular violation of law. Then, by the sixteenth section, provision is made for an appeal to the courts in case of noncompliance with the notice of its duty enjoined in respect of the matters charged against the carrier by the commission. If that refusal is in respect to a matter not triable by jury, the commission, or any party interested in the order or requirement it has made, may apply to the circuit court in equity upon petition for such order or process, mandatory or otherwise, as shall be necessary and appropriate to compel obedience to the order of the commission; and if, upon due hearing, the court shall find that the carrier has been guilty of the matter charged, and the order or requirement of the commission was such as the law required in such case, it will enforce obedience accordingly. It is to be observed that the whole scope of the duty thus imposed upon the court is the trial of the questions of fact and law involved in the inquiry as to whether the respondent was by the particular order of the commission required to execute a duty enjoined upon common carriers by the statute in the circumstances as they are found by the court to have existed; and, if that inquiry results in such a finding, then, also, in awarding the proper process for compulsion. The court is not authorized to make any general order or decree upon the matters at large as they shall appear before it, but is

given power simply to award its process if it judicially approves the order of the commission. If it does not find it to have been warranted by law, its power and duty are at an end.

In this case the record indicates that the complaint was made by parties residing at Ionia. After setting forth the facts upon which it was based, it summarizes the grounds thereof by alleging that the respondent was by its practice violating the second, third, and fourth sections of the act, and prayed that the respondent should be ordered to discontinue free cartage of freight for the merchants of Grand Rapids, or to render like service to the merchants of Ionia, or for other appropriate relief. The commission, after finding the facts, and giving its reasons for its conclusion, held that it followed therefrom that the defendant was guilty of violating the long and short haul clause of the fourth section, and that consignees at Ionia were overcharged to the extent indicated. The complaint was sustained on that ground, and the commission declared its purpose to order accordingly, without passing on the other points. The inhibition of the long and short haul clause is against the charging "any greater compensation in the aggregate for the transportation of passengers or the like kind of property under substantially similar circumstances and conditions for a shorter than for a longer distance," etc. The offense is made to consist in charging the greater compensation for the shorter distance, and this is what the commission concluded the respondent had done. It would seem that the due order for the correction of such offending would be to require the carrier to desist from charging the merchants of Ionia the greater compensation, and to fix a rate to correspond with its Grand Rapids rate, or accord some equivalent advantage to them, such as free cartage. Such correction would result in advancing the interests of the public at Ionia, and in leaving the public at Grand Rapids in the enjoyment of the facilities which have been afforded them by a practice which the commission rightly declares was perfectly lawful in itself. The effect of such an order might be somewhat disadvantageous to the competing railroad there, which is also one of its competitors at Grand Rapids, but it would furnish no lawful ground of complaint to such competitor. Instead of doing this, the commission made an order which raises the compensation which the public at Grand Rapids must pay for the service they have enjoyed, and the benefit of their loss does not come to any other portion of the general public, but falls into the hands of the competing railroads, by crowding their rival out. It seems to me the commission could not have sufficiently considered the results of their order. If they did, I am at a loss to understand how they could reconcile it with the spirit and policy of the law. If, as is claimed, (and I think it must be conceded, properly,) we cannot look back of the proceedings of the commission to inquire into the motive of the parties who set them in motion, we are yet bound to recognize the obvious consequences, and give their consideration due weight, in determining whether as matter of law the order we are asked to enforce was such as was warranted by the assumed facts. I cannot but think

that the express language of the long and short haul clause, the well-known general purpose of the act, and the argument drawn from results incongruous with that purpose, all concur to repel the approval of the order of the commission upon the ground assumed by it in its opinion.   However, if the facts as they are here found to exist are such as to have warranted the order, probably the conclusions of the commission as to matters of law are not material.

But I am also of the opinion that there was nothing in the facts which justified the conclusion that any provision of the statute had been violated.   Having, in the closing paragraph of the first section, indicated the general purpose, the act proceeds in sections 2, 3, 4, and 5 to lay down certain rules by which that object is to be attained.   By the second section it prohibits all kinds of discrimination in the imposition of charges upon different persons for the like service rendered under similar conditions.   By the third it prohibits all undue preference by the carrier to any person or locality or kind of traffic, or the subjecting of any person or locality to any undue or unreasonable disadvantage, and then proceeds to require the carrier to afford reasonable and equal facilities to connecting lines for the interchange of traffic, without discrimination of rates between such connecting lines.   The fourth section prohibits the charging a greater rate for transportation, under similar conditions, for a shorter than for a longer distance over the same line, in the same direction; the shorter being included within the longer distance.   The fifth prohibits the pooling of freights between competing carriers.   Subsequent sections contain subordinate regulations designed to facilitate the operation of the provisions of the sections above enumerated, especially the second, third, and fourth.

What is there in these provisions which, justly interpreted, renders the respondent's course of business, otherwise lawful, obnoxious to the prohibitory order of the commission?   Surely there is nothing in it which contravenes its general purpose.   But it is attempted by argument to show that this course of business is in conflict with some of the provisions which are designed to accomplish that purpose.   The argument appears to me to rest upon unsubstantial grounds which have been swept away by the rulings of the commission itself upon constructions of the law which have been acquiesced in as just and reasonable.   When it was held that it was consistent with the spirit of the law for the common carrier to group stations which were 75 or 100 miles apart, and charge a common rate to each, the strict construction of the act was abandoned for what was thought to be a more rational one.   And when it was further conceded that, for reasons founded on public necessity or convenience, the carrier might carry freight beyond its terminal station, and deliver it to its patrons along spur tracks and belt lines, another broad construction was adopted in the genuine spirit of the law.   The differing conditions and circumstances in large cities and small villages are rightly held to justify it.   The facts in the present case illustrate this.   The average distance from the station at Ionia to the merchants there is short, the place being

small. The distance at Grand Rapids is five times as great, and the business ten times as large. These differing circumstances and conditions are of a local character, and do not pertain to the transportation by the carrier. If they are not in terms those mentioned in the statute, they are at least relied upon in construction as elements to be taken into account in determining what is a reasonable discrimination. With these concessions in view, it is difficult to be very seriously impressed by the suggestion that one object of the law was to prevent the blighting effect upon smaller towns by the discrimination which had been given to larger ones, if by discrimination is meant the giving the facilities above mentioned. If that was an abuse, the law has passed it by. But it was not an abuse. It is absurd to say that a common carrier is bound to supply to every little hamlet the same advantages for the transmission and reception of freight that it does to large cities. The similar circumstances and conditions to which the statute refers are those which are found in the different localities to be served as well as those which pertain to the transportation. Whether the dissimilarity arises from one cause or the other, if it affects the service, it is within the language and the reason of the statute.

It is found by the commission that similar cartage is practiced by other common carriers at exceptional stations in Michigan, and is more or less extensively practiced by companies in other states at exceptional stations. By "exceptional" it is presumed to be understood that the conditions are similar to those at Grand Rapids, or otherwise the fact is irrelevant. Thus it happens that at one place, where the public necessity or convenience requires it, it is met by the projection of branches and belt lines beyond the terminal station of transportation at that locality, and from them delivering freight to their customers, and at another by rendering substantially the same service by cartage, at another by lighterage, a "business in which railroads are not usually employed." The only difference is in the means employed by the carrier, using that term in its strict sense, to accomplish the same end. But of what real significance is that? It is the service, the actual benefit given, which makes such discrimination as there is, and not the particular instrumentality by which it is effected. It is transportation, and that by a common carrier, in the one case as much as the other. So far as the public are concerned, the particular way in which the thing is done is matter of indifference, and no possible reason is perceived why that may not be left to be determined by the economy of the carrier. To say that it must be done on rails, and by steam, instead of on wagons, and by horse power, is purely arbitrary. The law is leveled at the carrier as such, and only at the railroad company in its character of a carrier. Conceding it to be permissible to build belt lines and spur tracks to reach many customers, and thereby obtain more business, it is yet said that this is so because it is a part of railroad business, and the means of delivery is by railroad; that cartage is not usual railroad business; that it is as foreign to ordinary freight business as it would be to do the packing for

shippers free of cost. This does not appear to me to state the situation correctly. Packing for the shippers is not only never done, but it is not transportation, or delivery or reception of goods. The cartage of goods, though not usual, is sometimes resorted to as a substitute for delivery on rails, and is generally resorted to when it is the most convenient method in the circumstances. And the suggestion also appears to me to be at fault in assuming that the statute makes any distinction between carrying wholly by rail and partly by rail and partly by other means, with any purpose to make the latter, when equivalent to the former, unlawful. I cannot think that any language in the act, or any postulate of reason, can be invoked upon which to say to the common carrier that the transportation which it may fairly do by the usual methods it employs it shall not do by any method not usually adopted, even though it is a perfectly lawful method for a common carrier, and is more economical for it in the special circumstances, and equally convenient to the public. The rate schedules of the carrier ordinarily, and probably almost universally, and the bills of lading issued thereon, in terms contemplate the station of the carrier as the locality to which the freight is consigned as the terminus of transportation, and the place of delivery. If we are to regard a service beyond that at one locality as per se a discrimination against a locality which does not receive it, it must be upon some principle; and, if there be such a principle, it must be equally efficacious to defeat the discrimination however produced. Calculation is made to show that it costs two cents per hundred to render the delivery service at Grand Rapids. How much it costs carriers to deliver freight by side tracks does not appear, but it must cost something, even if the track is laid for them; and of that the customer gets the benefit. It can make no difference in the principle how many get that benefit. Whether one or all, it is the same discrimination as to the public at Ionia. It would be allowable, it is said, for the respondent to extend branches through the city, and accommodate the public by delivery to them on those lines. If the situation were so fortunate that all or the great majority could be thus accomodated, it would not make the practice more objectionable.

It is charged that the schedule rates are violated. What do those rates mean? In strictness, as already pointed out, they mean transportation from and to the stations named. In fact they mean that, together with the terminal facilities which are afforded by the carrier. The contract of transportation is entered into with those in view. These incidental facilities furnished at the locality of the station in one form or another are enjoyed by the consignees of a very large proportion of the freight traffic of the country. There is no violation of the schedule of rates in this practice, for the schedule is not, in the general business of the public, construed in so strict a way as the suggestion implies.

It is said that the defraying the expense of cartage delivery is generally exactly equivalent to the railway company's reducing the freight by as much as the cartage would cost the consignee, and that this latter would be a violation of the long and short haul

clause if the reduction were made at Grand Rapids and not at Ionia. This argument proves too much, and cannot be sound. It would overturn much wholesome doctrine which is already well settled. By the same reasoning, any advantage of any value given by the terminal facilities of the carrier to customers at one place is exactly equivalent to a reduction to the same extent as that value from the freight charge to that place, and is an unlawful discrimination against others in that group. The fault in the argument is, I think, in assuming the false premise that a carrier may not do more at one place than he does at another for the same price,—a proposition that is refuted in every day's transactions in the carriage of freight. In this case it is shown that freight is carried by Ionia, 34 miles, to Grand Rapids, and nothing is charged for the carriage for that distance. It costs the carrier something to do this. It would cost the Grand Rapids merchant some money to·bring the goods from the place. where the Ionia merchant takes his. Is it permissible to say that by the amount of that cost, either to the carrier or the Grand Rapids merchant, the rate common to both places is lessened to the Grand Rapids merchant, and the Ionia merchant is discriminated against?

It is also said that because the respondent has grouped Grand Rapids and Ionia together it conclusively admits that, so far as transportation from the east to the warehouse of the company at the two places is concerned, it is under substantially similar circumstances and conditions. I do not understand the admission to be as stated. The warehouse at Grand Rapids is not in fact the terminus of transportation which the respondent had in mind when it made the grouping, nor does the fact that places are grouped make it necessary to assume that they shall all have the same accommodations. It might as well be said that, having regard to the long and short haul clause, such grouping is a conclusive admission that the distance from the east to Grand Rapids is not greater than that to Ionia, whereas nobody supposes that to be admitted. So far as there is any admission, it is only that the distances are nearly the same,—practically the same in the large view of the subject. It seems to me that we are not to allow our vision to be suddenly and capriciously narrowed, but should continue to see the subject on the same wide field in all its relations.

Tied to this erroneous assumption is another proposition, which, standing by itself, may be quite true, namely, that any benefit in relation to the shipment of goods, having a definite money value, conferred gratis by the carrier upon one shipper which is not conferred upon another where the service is admittedly under similar conditions, is an undue reduction in the price of carriage to the former, and therefore illegal. But this proposition, and the conclusion, as applied to such facts as we have in the present case, depend upon the assumption that there is any money value conferred gratis. If the incidents of delivery at the terminus, whether by the usage there it be by one means or another, are included in the contract and price for carriage, the costs of those incidents cannot be scaled off and carried back upon the whole price in order to re-

duce the price of the mere carriage between station houses.   Nor do the similar conditions exist if one place is out of all proportion with another, and the station at the small place is located close to the local business, and at the large one it is a long distance off. The exact dissimilarity is not overcome until this disadvantage at the larger place is measurably reduced.   It is impossible to make the adjustment nicely.   If it be said that free cartage, as it is erroneously called, more than makes up for the inequality of conditions, and that to the extent of the excess it is a gratuity, one answer is that the excess thus afforded is not greater than the deficit or disadvantage which would exist without it.   It is the mere oscillation of the pendulum swinging within lawful limits.   Pertinent to this is the suggestion that it would, of course, not be a discrimination that could be complained of that the company puts its station at one town nearer the business center than at another, and, if free cartage could be said to properly make up for the longer distance of respondent's station from the business center of Grand Rapids, and in this respect to put the Grand Rapids merchants on the same footing as Ionia merchants with their proximity to the station, then it would seem to be unobjectionable, because justified by the dissimilar circumstances.   But it is asked, can this be said?   And the argument in support of a negative answer is that, if the defendant's station at Grand Rapids were moved into the business center, the shippers would still have to pay for the cartage.   It may be that it would be a less price, but still they would have to pay.   The equalizing of the conditions between the two places in this respect would be complete by a charge for cartage by the railway company at the lower rate which would be charged for cartage were the station in the city.   The proposition admits that the practice would be unobjectionable, because justified by the dissimilar circumstances, if only the disadvantage were overcome; but the gravamen of the mischief consists, it is urged, in the remedy being overdone.   But, as the overdoing is not greater than the mischief overcome, and the result is not injurious to the public, but beneficial, rather, I can see no reason for condemning the practice as a whole.

And even if the argument above quoted were sound, it would not justify the order made by the commission, which not only forbids the alleged mischief, but the remedy to the public for an acknowledged disadvantage.   Upon the theory suggested, the real unlawfulness of the practice is in the excess referred to, and the order should have been appropriate to its correction, and stopped there, instead of utterly depriving the public of a remedy "justified by the dissimilar circumstances."   But, as already said, the court can make no new order.   The order of the commission stands or falls as made.   The theory last mentioned, and the argument in its support, proceed upon too nice distinctions.   Such close balancing is impracticable, and is not attempted in the administration of the statute generally.

In answer to the claim that on account of its greatly larger size and business Grand Rapids is entitled to greater facilities than a

small place, it is said that, in so far as the greater amount of business enables the railway company to do carting at a cheaper rate at Grand Rapids than at Ionia, by so much may the carrier reduce the cartage cost to the shipper at the former place, because this is a legitimate and actual dissimilarity in conditions between the two places. The dissimilarity of conditions which is thus admitted to be legitimate ground for different rates of cartage prices at the two places, consists primarily in the greater amount of business at Grand Rapids, and consequentially in the fact that therefore it can be more cheaply done. But the cartage is parcel only of the whole transportation. It is done to augment the bulk of that business. And no reason is perceived why the discrimination which would justify a larger cartage for the same money would not justify a larger service in the whole transportation, the business being so much larger as to make it an object on ordinary business principles for the carrier to render that service in order to gain the profits accruing from its greater volume. The public at Grand Rapids are entitled to enjoy the corresponding advantage which results from the aggregation of their business, and, if that aggregation justifies their superior accommodation on business principles, there is nothing in the interstate commerce law, fairly interpreted, which prevents their enjoyment of it. The breeding of artificial distinctions in this law is, in my opinion, very objectionable, and very likely to impair its utility to the public, who are the parties most likely to suffer on every occasion, when, losing sight of its main object, the commission or the courts listen to the ingenious weaving of unsubstantial fabrics among the branches of the statute by interested parties.

In this opinion the result is reached upon considerations which do not depend upon any supposed right of the respondent to be protected in the privilege of putting itself upon a footing of equality in competition for the business at Grand Rapids. The commission has, in many instances, recognized such a right, and incidentally, at least, sought to protect it. The circuit courts in the fifth and ninth circuits have held that the competition of other roads might produce such dissimilarity in conditions as the statute recognizes in permitting the rendition of greater service for the same compensation. To what extent this may be carried it has not been deemed necessary here to say. For the reasons given, and with great respect to the commission, I cannot bring myself to the conclusion that their order is right, and I feel bound to withhold my assent from it. My conviction is that it would establish a precedent, the principle of which, carried to its logical conclusion, would reach far into existing usages, and be extremely injurious to the interests of the public in many localities, without any corresponding advantages to the public anywhere else.