## FEDERAL TRADE COMMISSION *v.* KLESNER.

No. 8.   Argued April 10, 1929.—Decided October 14, 1929.

20

For earlier decisions in the same case, see 6 F. (2d) 701; 274 U. S. 145.

*Mr. Adrien F. Busick,* Assistant Chief Counsel, Federal Trade Commission, with whom *Attorney General Mitchell* and *Messrs. Robert E. Healy,* Chief Counsel, and *James W. Nichol* were on the brief, for petitioner.

*Mr. Clarence R. Ahalt* submitted for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This case is here on certiorari, for the second time. It was brought in the Court of Appeals of the District of Columbia by the Federal Trade Commission under § 5 of the Act of September 26, 1914, c. 311, 38 Stat. 717, 719, to enforce an order entered by it. The order directs Klesner, an interior decorator, who does business in Washington under the name of Hooper & Klesner, to "cease and desist from using the words 'Shade Shop' standing alone or in conjunction with other words as an identification of the business conducted by him, in any manner of advertisement, signs, stationery, telephone, or business directories, trade lists or otherwise." That court dismissed the suit on the ground that, unlike United States circuit courts of appeals, it lacked jurisdiction to enforce orders of the Federal Trade Commission. 6 F. (2d) 701. On the first certiorari, we reversed the decree and directed that the cause be remanded for further proceedings. *Federal Trade Commission* v. *Klesner,* 274 U. S. 145. Then the case was reargued before the Court of Appeals, on the pleadings and a transcript of the record before the

Commission; and was dismissed on the merits, with costs. 25 F. (2d) 524. This second writ of certiorari was thereupon granted. 278 U. S. 591. We are of opinion that the decree of the Court of Appeals should be affirmed— not on the merits, but upon the ground that the filing of the complaint before the Commission was not in the public interest.

The conduct which the Commission held to be an unfair method of competition practiced within the District had been persisted in by Klesner ever since December, 1915. The complaint before the Commission was filed on December 18, 1920. The order sought to be enforced was entered June 23, 1922. This suit was begun on May 13, 1924. The evidence before the Commission, which occupies 394 pages of the printed record in this Court, is conflicting only to a small extent. The findings of the Commission are in substance as follows:

Sammons has for many years done business in Washington as maker and seller of window shades, under the name of "The Shade Shop." Prior to 1914, that name had, by long use, come to signify to the buying public of the District the business of Sammons. The concern known as Hooper & Klesner has also been in business in Washington for many years. Prior to 1915, its trade had consisted mainly of painting and of selling and hanging wallpaper. It had dealt also, to some extent, in window shades, taking orders which it had executed either by Sammons or some other maker of window shades. In 1914, Hooper & Klesner leased a new store pursuant to an arrangement with Sammons, and sub-let to him a part of it. There Sammons continued his business of making and selling window shades as an independent concern under the name of "The Shade Shop." His gross sales there were at the rate of $60,000 a year. On a Sunday in November, 1915, he removed all his effects from those

24

premises and established his business in another building four doors away.

Sammons' removal was in confessed violation of his agreement with Hooper & Klesner. An acrimonious controversy ensued. Threats of personal violence led to Sammons' having Klesner arrested; and this to bitter animosity. Out of spite to Sammons, and with the purpose and intent of injuring him and getting his trade, Hooper & Klesner decided to conduct on its own account, in the premises which Sammons had vacated, the business of making and selling window shades. It placed upon its show windows, and also upon its letterheads and billheads, the words "Shade Shop"; and listed its business in the local telephone directory as "Shade Shop, Hooper & Klesner" and as "Shade Shop." A like sign was placed on its delivery trucks. This use by Hooper & Klesner of the term "Shade Shop" has caused, and is causing, "confusion to the window-shade purchasing public throughout the District"; and, on certain occasions, customers who entered Hooper & Klesner's shop were deceived by employees, being led to believe that it was Sammons'. Meanwhile, Klesner had become the sole owner of the business.

Such were the findings of the Commission. The Court of Appeals concluded that there was no showing either that Klesner was attempting to dispose of his goods under the pretense that they were the goods of Sammons, or that he was attempting to deceive or entice any of Sammons' customers; that the evidence introduced to show deception went no further than that some of the public may have purchased from Klesner under a mistaken belief that they were dealing with Sammons; that the words "Shade Shop" were being used by Klesner always in connection with the words Hooper & Klesner; and that the term "Shade Shop" as used by Klesner merely indicated

that his store was a place where window shades were made and sold.  The Court of Appeals ruled that these words, being descriptive of a trade or business, were incapable of exclusive appropriation as a legal trademark or trade name; and that there was nothing in the facts to justify the charge of unfair competition.  It, therefore, dismissed the suit on the merits, the ground of decision being that there was a lack of those facts which, in a court of law or of equity, are essential to the granting of relief for alleged acts of unfair competition.

We need not decide whether the Court of Appeals was justified in all of its assumptions of fact or in its conclusions on matters of law.  For we are of opinion that the decree should be affirmed on a preliminary ground which made it unnecessary for that court to enquire into the merits.  Section 5 of the Federal Trade Commission Act does not provide private persons with an administrative remedy for private wrongs.  The formal complaint is brought in the Commission's name; the prosecution is wholly that of the Government; and it bears the entire expense of the prosecution.  A person who deems himself aggrieved by the use of an unfair method of competition is not given the right to institute before the Commission a complaint against the alleged wrongdoer.  Nor may the Commission authorize him to do so.  He may of course bring the matter to the Commission's attention and request it to file a complaint.[1]  But a denial of his request is final.  And if the request is granted and a proceeding is

---

[1] The rules of practice adopted by the Commission require that the application be in writing and " contain a short and simple statement of the facts constituting the alleged violation of law and the name and address of the applicant and of the party complained of."  Rules of Practice, No. II.  See Annual Report of the Federal Trade Commission for 1928, pp. 17, 18, 41, 42; and Exhibit 5, p. 132.  As to changes made in the procedure and policy March 17, 1925 and September 17, 1928, see id., Exhibit 1, pp. 117–119.

26

instituted, he does not become a party to it or have any control over it.[2]

The provisions in the Federal Trade Commission Act concerning unfair competition are often compared with those of the Interstate Commerce Act dealing with unjust discrimination. But in their bearing upon private rights, they are wholly dissimilar. The latter Act imposes upon the carrier many duties; and it creates in the individual corresponding rights. For the violation of the private right it affords a private administrative remedy. It empowers any interested person deeming himself aggrieved to file, as of right, a complaint before the Interstate Commerce Commission; and it requires the carrier to make answer. Moreover, the complainant there, as in civil judicial proceedings, bears the expense of prosecuting his claim.[3] The Federal Trade Commission Act contains no such features.

---

[2] The sole privilege conferred upon private persons is contained in the following provision of § 5: "Any person, partnership, or corporation may make application, and upon good cause shown may be allowed by the Commission, to intervene and appear in said proceeding by counsel or in person." 38 Stat. 719.

[3] Prior to the Act of June 18, 1910, c. 309, § 11, 36 Stat. 539, 550, which in terms conferred upon the Interstate Commerce Commission power to issue orders in proceedings initiated by it, orders were, with a few exceptions, entered only on complaints filed by shippers or others. Even after the Act of June 29, 1906, c. 3591, 34 Stat. 584, it was asserted that the Commission was without power to enter orders in proceedings initiated by it. Report of the House Committee on Interstate and Foreign Commerce, April 1, 1910, 61st Cong., 2d Sess., No. 923, pp. 3, 10; 45 Cong. Rec., Appendix, p. 88. Compare *In the Matter of Allowances for Transfer of Sugar*, 14 I. C. C. 619, 627. It had been stated earlier (*Interstate Commerce Com.* v. *Detroit, etc., Ry.*, 57 Fed. 1005, 1008) that the power existed; and its existence was assumed in *Interstate C. C.* v. *Northern Pacific R. Co.*, 216 U. S. 538, 542.

Both the United States Shipping Board Act of September 7, 1916, c. 451, § 22, 39 Stat. 728, 736, and the Packers and Stockyards Act of

While the Federal Trade Commission exercises under § 5 the functions of both prosecutor and judge, the scope of its authority is strictly limited. A complaint may be filed only "if it shall appear to the Commission that a proceeding by it in respect thereof would be to the interest of the public." This requirement is not satisfied by proof that there has been misapprehension and confusion on the part of purchasers, or even that they have been deceived,—the evidence commonly adduced by the plaintiff in "passing off" cases in order to establish the alleged private wrong. · It is true that in suits by private traders to enjoin unfair competition by "passing off," proof that the public is deceived is an essential element of the cause of action. This proof is necessary only because otherwise the plaintiff has not suffered an injury. There, protection of the public is an incident of the enforcement of a private right.[4] But to justify the Commission in filing a complaint under § 5, the purpose must be protection of the public.[5] The protection thereby afforded to private persons is the incident. Public interest may exist although the practice deemed unfair does not violate any private right. In *Federal Trade Commission* v. *Beech-Nut Packing Co.*, 257 U. S. 441, a practice was suppressed as being against public policy, although no private right either of a trader or of a purchaser appears to have been invaded. In *Federal Trade Commission* v. *Winsted*

August 15, 1921, c. 64, §§ 308, 309, 42 Stat. 159, 165, confer upon private individuals the right to institute proceedings and upon the administrative tribunal the power to award reparations.

[4] See *American Washboard Co.* v. *Saginaw Mfg. Co.*, 103 Fed. 281, 284–285; *Borden Ice Cream Co.* v. *Borden's Condensed Milk Co.*, 201 Fed. 510, 513; *Rosenberg Bros. & Co.* v. *Elliott*, 7 F. (2d) 962, 965; Nims, Unfair Competition (Third edition) pp. 27–36.

[5] See *Royal Baking Powder Co.* v. *Federal Trade Commission*, 281 Fed. 744, 752; *Federal Trade Commission* v. *Balmé*, 23 F. (2d) 615, 620; *Indiana Quartered Oak Co.* v. *Federal Trade Commission*, 26 F. (2d) 340, 342.

*Hosiery Co.,* 258 U. S. 483, an unfair practice was suppressed because it affected injuriously a substantial part of the purchasing public, although the method employed did not involve invasion of the private right of any trader competed against.

In determining whether a proposed proceeding will be in the public interest the Commission exercises a broad discretion. But the mere fact that it is to the interest of the community that private rights shall be respected is not enough to support a finding of public interest. To justify filing a complaint the public interest must be specific and substantial. Often it is so, because the unfair method employed threatens the existence of present or potential competition. Sometimes, because the unfair method is being employed under circumstances which involve flagrant oppression of the weak by the strong. Sometimes, because, although the aggregate of the loss entailed may be so serious and widespread as to make the matter one of public consequence, no private suit would be brought to stop the unfair conduct, since the loss to each of the individuals affected is too small to warrant it.[6]

The alleged unfair competition here complained of arose out of a controversy essentially private in its nature. The practice was persisted in largely out of hatred and malice engendered by Sammons' act. It is not claimed that the article supplied by Klesner was inferior to that

---

[6] Compare *Federal Trade Commission* v. *Beech-Nut Co.,* 257 U. S. 441; *Federal Trade Commission* v. *Pacific Paper Assn.,* 273 U. S. 52; *Wholesale Grocers' Ass'n* v. *Federal Trade Commission,* 277 Fed. 657; *Southern Hardware Jobbers' Ass'n* v. *Federal Trade Commission,* 290 Fed. 773; *Oppenheim, Oberndorf & Co., Inc.,* v. *Federal Trade Commission,* 5 F. (2d) 574; *Toledo Pipe-Threading Mach. Co.* v. *Federal Trade Commission,* 11 F. (2d) 337; *Cream of Wheat Co.* v. *Federal Trade Commission,* 14 F. (2d) 40; *Arkansas Wholesale Grocers' Ass'n* v. *Federal Trade Commission,* 18 F. (2d) 866; *Kobi Co.* v. *Federal Trade Commission,* 23 F. (2d) 41.

of Sammons, or that the public suffered otherwise financially by Klesner's use of the words "Shade Shop." It is significant that the complaint before the Commission was not filed until after the dismissal, in 1920, of a suit which had been brought by Sammons in 1915, in the Supreme Court of the District, to enjoin Klesner's use of the words "Shade Shop." [7] When the Commission directed the filing of the complaint Hooper & Klesner had been using those words in its business for five years. They had been used for nearly seven years before the order here in question was made; and for nearly nine years before this suit to enforce it was begun. Whatever confusion had originally resulted from Klesner's use of the words must have been largely dissipated before the Commission first took action. If members of the public were in 1920, or later, seriously interested in the matter, it must have been because they had become partisans in the private controversy between Sammons and Klesner.

The order here sought to be enforced was entered upon a complaint which had in terms been authorized by a resolution of the Commission. The resolution declared, in an appropriate form, both that the Commission had reason to believe that Klesner was violating § 5, and that it appeared to the Commission that a proceeding by it in respect thereof would be to the interest of the public. Thus, the resolution was sufficient to confer upon the Commission jurisdiction of the complaint. Section 5 makes the Commission's finding of facts conclusive, if supported by evidence. Its preliminary determination that

---

[7] The original rule to show cause issued in the action was dismissed by the Supreme Court of the District on the 23rd day of December, 1915, "upon consideration of the Bill of Complaint, the exhibits thereto, and the rule to show cause issued thereon, and the answer and exhibits to said rule, as well as the arguments of counsel thereon." No further proceedings were had in the action until its final dismissal on May 24, 1920.

institution of a proceeding will be in the public interest, while not strictly within the scope of that provision, will ordinarily be accepted by the courts. But the Commission's action in authorizing the filing of a complaint, like its action in making an order thereon, is subject to judicial review. The specific facts established may show, as a matter of law, that the proceeding which it authorized is not in the public interest, within the meaning of the Act. If this appears at any time during the course of the proceeding before it, the Commission should dismiss the complaint. If, instead, the Commission enters an order, and later brings suit to enforce it, the court should, without enquiry into the merits, dismiss the suit.

The undisputed facts, established before the Commission, at the hearings on the complaint, showed affirmatively the private character of the controversy. It then became clear (if it was not so earlier) that the proceeding was not one in the interest of the public; and that the resolution authorizing the complaint had been improvidently entered. Compare Gerard C. Henderson, *The Federal Trade Commission,* pp. 52–54, 174, 228–229, 337. It is on this ground that the judgment dismissing the suit is *Affirmed.*