## RALADAM CO. v. FEDERAL TRADE COMMISSION.

### No. 8026.

Circuit Court of Appeals, Sixth Circuit.

Oct. 7, 1941.

Rockwell T. Gust, of Detroit, Mich. (Butzel, Eaman, Long, Gust & Bills, Rockwell T. Gust, and David A. Howell, all of Detroit, Mich., on the brief), for petitioner.

Martin A. Morrison, of Washington, D. C. (W. T. Kelley, Martin A. Morrison, Harry D. Michael, and James W. Nichol, all of Washington, D. C., on the brief), for respondent.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

For the second time the Raladam Company petitions this court to review and set aside an order of the Federal Trade Commission directing it to cease and desist from certain practices with reference to offering for sale, and sale and distribution, in interstate commerce, of a preparation known as Marmola and used in the treatment of obesity.

In the previous case [6 Cir., 42 F.2d 430] we vacated the order of the Commission on the ground that the evidence failed to disclose the existence of competition within the meaning of the Act, 15 U.S.C.A. § 41 et seq.; and on the further ground that it was not shown that the representations in the advertising of Marmola that it was a safe and scientific remedy were in fact false.

The Supreme Court affirmed the order [Federal Trade Comm. v. Raladam Co., 283 U.S. 643, 51 S.Ct. 587, 590, 75 L.Ed. 1324, 79 A.L.R. 1191] on the ground that no substantial competition, present or potential, was shown by the proof or from necessary inference, to have been injured, or threatened with injury to a substantial extent by the use of the alleged unfair methods complained of. The court held that jurdisdiction of the Commission to make the order was lacking in the absence of a showing of competition, and that the proceeding must be dismissed. The Supreme Court and this court refused to grant motions to modify the order to permit the taking of additional evidence on the question of injury to competitors. Thereupon the Commission filed its amended complaint charging petitioner with certain violations of the Act subsequently to the date of its cease and desist order in the first proceeding and in due course it issued an order requiring petitioner to cease and desist from making certain specified representations in its advertising of Marmola.

Petition for review was filed here on May 19, 1938, which was subsequent to an amendment of the Act effective March 21, 1938, 52 Stat. 112, 15 U.S.C.A. § 41 et seq. Under the amendment the Commission is not required to file a petition for an order of enforcement, this court having jurisdiction upon the filing of the petition to review the record. However, since the amended complaint was filed prior to the amendment, the violations charged, if we come to that question, must be construed in the light of the wording of the Act as of that time.

■ Petitioner contends that the issues here are res adjudicata. We do not agree thereto. This case involves a different time period and representations which raise issues other than whether Marmola is a safe and scientific remedy. Moreover, all that was decided by the Supreme Court was that the Commission had no jurisdiction to issue the order under the evidence presented. The holding of this court that it appeared that the safe and scientific nature of Marmola as a remedy for obesity was a matter of opinion rather than one for factual determination must yield to the Supreme Court's opinion that there was no jurisdiction to issue the order in the first place. In the light of the ruling of the Supreme Court the assumption by that court that the advertisements of Marmola were dangerously misleading and that a proceeding to prevent

their use was in the interest of the public, must be regarded by us as it was by the Supreme Court, i. e., simply an assumption for the purposes of its decision.

■ We must follow the Supreme Court upon the issue it decided, that of jurisdiction, unless the evidence in this case presents a radically different situation as to petitioner's competitors. We are bound to resolve the question of jurisdiction preliminarily to any consideration on the merits. In considering jurisdiction the Supreme Court stated that there are three distinct prerequisites for a cease and desist order, namely, (1) that the methods complained of are unfair; (2) that they are methods of competition in commerce; and (3) that a proceeding by the Commission to prevent a use of the methods appears to be in the interest of the public. In order to simplify its consideration of the second prerequisite, the court, as we have noted, assumed the existence of the first and third. As to the second, it said: "Thus the Commission is called upon first to determine, as a necessary prerequisite to the issue of a complaint, whether there is reason to believe that a given person, partnership, or corporation has been or is using any unfair method of competition in commerce; and, that being determined in the affirmative, the Commission still may not proceed, unless it further appear that a proceeding would be to the interest of the public, and that such interest is specific and substantial. Federal Trade Commission v. Klesner, 280 U.S. 19, 28, 50 S.Ct. 1, 74 L.Ed. 138, 68 A.L.R. 838. Unfair trade methods are not per se unfair methods of competition."

■ It continued that the word "competition" imported the existence of present or potential, substantial competition and that the unfair methods must be such as unjustly affected or tend to affect the business of these competitors; that: "While it is impossible from the terms of the act itself, and in the light of the foregoing circumstances leading up to its passage, reasonably to conclude that Congress intended to vest the Commission with the general power to prevent all sorts of unfair trade practices in commerce apart from their actual or potential effect upon the trade of competitors, it is not necessary that the facts point to any particular trader or traders. It is enough that there be present or potential substantial competition, which is shown by proof, or appears by necessary inference, to have been injured, or to be

clearly threatened with injury, to a substantial extent, by the use of the unfair methods complained of."

The court then applied these principles to the facts, saying: "Findings of the Commission justify the conclusion that the advertisements naturally would tend to increase the business of respondent; but there is neither finding nor evidence from which the conclusion legitimately can be drawn that these advertisements substantially injured, or tended thus to injure, the business of any competitor or of competitors generally, whether legitimate or not. None of the supposed competitors appeared or was called upon to show what, if any, effect the misleading advertisements had, or were likely to have, upon his business. The only evidence as to the existence of competitors comes from medical sources not engaged in making or selling 'obesity cures,' and consists in the main of a list of supposed producers and sellers of 'anti-fat remedies' compiled from the files and records of the Bureau of Investigation of the American Medical Association, a list which appears to have been gathered mainly from newspapers and advertisements."

The court went on to say that it was impossible to determine from the record whether these "competitors" were injured by petitioner's advertising or whether they were in any sense real competitors, and if the preliminary assumption of competition is without foundation, jurisdiction to make the order fails.

On the issue of competition the Commission in Paragraph Three of its "Findings as to the Facts" had this to say:

"During the time above mentioned, other individuals, firms and corporations in various States of the United States are and have been engaged in the sale and distribution in interstate commerce of medicines, preparations, systems, methods, books of instruction, and other commodities, articles and means designed, intended and used for the purpose of effecting weight reduction. Such other individuals, firms and corporations have caused and do now cause their said medicines, preparations, systems, methods, books of instruction, and other articles and means, when sold by them, to be transported from various States of the United States to, into and through States other than the State of origin of the shipments thereof. Respondent has been, during the aforesaid time, in substantial competition, in the sale of Marmola, with such other individuals, firms and corporations. Some of such competing products are sold direct to the consuming public while others are sold to wholesale and retail dealers through whom they are in turn sold to members of the public for their use.

"Respondent's preparation is in competition with all medical preparations sold and used for reducing purposes regardless of whether such preparations are of the so-called 'patent medicine' type or are pharmaceutical preparations which may be bought by members of the consuming public on their own initiative or on the prescription of a physician. Competing products include, also, the following: medical preparations which are used as adjuvants in the treatment of obesity, such as laxative salts; preparations sold and used for the purpose of effecting the lessening of the consumption of fat producing foods; and books of instruction on the subjects of diet or exercise, or both, intended and used for the purpose of effecting reduction by one or both of these means; * * *

"Respondent, in its advertising matter, recognizes that competing products are not confined to those preparations or products of the same general character as Marmola by specifically advising and urging the use of Marmola for reducing, instead of the use of diet, exercises, purgatives, cathartics, salts, laxatives and other methods used for effecting reduction."

These findings were based upon the testimony of two or three drug and chain store operators that they sold, over the counter, several patented reducing remedies in addition to Marmola. They testified that ordinarily these remedies were stocked after advertising had created a demand for them. There was slight evidence that one or two companies selling the patented remedies had had a recent decline in sales. Only one or two witnesses were expressly questioned as to whether they considered Marmola a competing preparation. One emphatically disclaimed any such competition. There was no substantial evidence supporting the formula of the Supreme Court "that these advertisements substantially injured, or tended thus to injure, the business of any competitor. * * *" It appears that the majority in number of these "competitors" were likewise in the business of commercially exploiting obesity remedies by advertising them to the general public.

In the previous case we expressed our disbelief "that the machinery of the Commis-

38

sion was intended to give governmental aid to the protection of this kind of trade and commerce." 42 F.2d 437. The Supreme Court although not finding it necessary to decision, tentatively approved our view upon this feature.

We have greater difficulty with those "competitors" who have published books of instruction on the subject of diet or exercise, and those who are engaged strictly in the sale and distribution of ethical remedies which were advertised and otherwise made known to physicians, but even in these instances there was no substantial evidence that the Marmola advertising even tended to injure the sale of these publications and preparations. We find no evidence in the record upon which a substantial inference can be based that this was so. We cannot approve the finding of the Commission upon pure speculation. Marmola's sole connection with these distributees is through the slender thread that each has some relation to obesity reduction. These so-called "competitors" are not engaged in the sale of an apparently standardized product as in the case of Federal Trade Commission v. Winsted Co., 258 U.S. 483, 42 S.Ct. 384, 66 L.Ed. 729. In the present case "the competitors" approached the treatment of obesity from widely divergent viewpoints. We cannot say that the class who consult physicians about their ailments or "who read up" thereon, were, or would be, drawn by this advertising into the class of those who have been deceived by nostrums held out to accomplish miracles of healing.

The order of the Commission is set aside.