BERKEY & GAY FURNITURE CO. et al. v. FEDERAL TRADE COMMISSION.

Nos. 5290–5314.

Circuit Court of Appeals, Sixth Circuit.

July 2, 1930.

428

S. E. Knappen and F. D. Campau, both of Grand Rapids, Mich., for petitioners.

J. M. Brinson, of Washington, D. C. (Robt. E. Healy and Martin A. Morrison, both of Washington, D. C., on the brief), for respondent.

Before MOORMAN, MACK, and HICK-ENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

The petitioners are manufacturers of furniture, located in the city of Grand Rapids, Mich., and distributing their products to and through dealers only. Complaint was filed before the Federal Trade Commission charging that the respondents, here petitioners, built their furniture principally of other woods and caused the same to be veneered with a thin coating of mahogany or walnut, without disclosing that such furniture was veneered; that numerous persons had been induced by such means to purchase veneered furniture in the belief that the exposed portions of such furniture were made of solid mahogany or solid walnut; and that the practices of said respondents had caused, and was causing, trade to be unfairly diverted to respondents from competitors.

The record discloses, without dispute, that the finest of all modern furniture, having exposed flat surfaces, such as tables, desks, and the like, are constructed of laminated wood, with the grains of the various layers running in different directions so as to prevent cracking and warping, and with a layer of walnut or mahogany veneer secured to the exposed surface. Indeed, such is the only practical way of constructing flat surfaces of large area, and all of the beautiful effects of matched graining may be obtained only in this manner. The practice is substantially universal. The record contains no evidence that any of the dealers to whom the present petitioners sold furniture were in any wise deceived; that the practice of such petitioners cheapens the product or affects its durability; or that any trade whatsoever was thereby diverted to such petitioners from the very few competitors who still attempted the manufacture of furniture of solid or unlaminated woods. The sole question is whether, under these circumstances, there is any evidence to support the order of the commission that the petitioners cease and desist from selling furniture, so constructed, unless such furniture be described, labeled or designated as "Veneered," or from using the word "mahogany" or the word "walnut" in advertisements, catalogues, price lists, invoices, or otherwise, in connection with the sale, or offering for sale, in interstate commerce of furniture so made, unless accompanied by the word or term "Veneered."

The record contains testimony to the effect that some retailers are accustomed to fol-

low the invoices in tagging furniture, not only in affixing symbols to the tag indicative of cost, but also in adding the description. It is thus urged on behalf of the Commission that the petitioners must be charged with knowledge of this practice; that they are responsible for the probable results of their actions; that the labeling of furniture in this manner by the retailer has a tendency to deceive the ultimate purchaser; and that, in any event, no objection can reasonably be taken to the requirement that all manufacturers fully describe their products as and for what they truly are.

■ In the present case it is unnecessary to determine the elsewhere much-mooted question whether the jurisdiction of the Federal Trade Commission extends to each and all cases of insufficient or false labeling, whereby the public may be led to purchase products which may be harmful, or which are of inferior, or even simply of different, quality, construction, or ingredients, from those which it was intended to purchase, without other showing of the effect of this upon competition.[1] In such a case action by the Commission may be justified, under the terms of the act, only upon the assumption or inference that deception necessarily tends to promote unfair competition with those who are selling the true article or the genuine product called for (by the false label. Compare Federal Trade Commission v. Winstead Hosiery Co., 258 U. S. 483, 42 S. Ct. 384, 66 L. Ed. 729; Masland Duraleather Co. v. Federal Trade Commission, 34 F.(2d) 733 (C. C. A. 3); L. B. Silver Co. v. Federal Trade Commission, 289 F. 985 (C. C. A. 6); Procter & Gamble Co. v. Federal Trade Commission, 11 F.(2d) 47 (C. C. A. 6). Unfair competition must either appear or be clearly inferable from the circumstances of the case, and the resulting injury to the public must be specific and substantial. Federal Trade Commission v. Klesner, 280 U. S. 19, 28, 50 S. Ct. 1, 74 L. Ed. 138. Section 5 of the act (Act Sept. 26, 1914, c. 311, § 5, 38 Stat. 719; Act Feb. 13, 1925, c. 229, § 2, 43 Stat. 939 [15 USCA § 45]) declares only "unfair methods of competition" unlawful, and empowers the Commission, in the public interest, to prevent persons engaging in such commerce from using unfair methods of competition therein. As said in Federal Trade Commission v. Gratz, 253 U. S. 426, 427, 40 S. Ct. 572, 574, 64 L. Ed. 993: "If, when liber-

ally construed, the complaint is plainly insufficient to show unfair competition within the proper meaning of these words there is no foundation for an order to desist—the thing which may be prohibited is the method of competition specified in the complaint." To the same effect, if the record wholly fails to reveal any substantial evidence of such unfair competition, or facts from which it may be clearly inferred, the charge is unsustained, and the order must be set aside.

■ Here the record affirmatively discloses, without dispute, that all furniture of the better quality has its flat surfaces constructed of ply wood, or laminated and veneered woods, and that only the cheaper and poorer grades of less valuable material are constructed of solid woods. There is a complete lack of evidence that the petitioners' products were ever expressly sold as "solid" or unlaminated furniture, but only, at best, as "mahogany" or "walnut," with the barely possible inference therefrom that they were unlaminated. This, we think, is wholly insufficient to support a finding of unfairness in competition with the manufacturers of solid furniture as a whole, even if, indeed, a finer and more costly product may be said at .all to be sold in competition, in the proper acceptation of the terms, with that of cheaper and inferior grade. Unfair methods of competition being entirely excluded from the case, it is the duty of the court to reverse the decision of the Commission as wholly unsupported by any substantial evidence.

We do not consider that it is a confession of misbranding or false labeling to urge the invalidity of the Commission's order, or to assert an unwillingness to comply therewith. If that order be invalid, the petitioner should not be burdened by its issuance. Petitioners are entitled to be heard upon this question, and there may also be questions of costs, as well as the natural aversion of all honest manufacturers to the maintenance of charges of deception, fraud, and unfair practice.

■ Lastly, the petitioners are to be charged only with those acts of their dealers which might reasonably be anticipated, and then subjected to restraint by the Commission only if such anticipated action creates a reasonable expectation of tendency to deceive. In the present case the petitioners have no reasonable ground for believing that the retailer will mark the goods as "solid" or "genuine" mahogany, implying by the latter phrase that no other wood is used, where the catalogues, cost sheets, correspondence, and invoices refer only to mahogany, and where

---

[1] See our opinion in Raladam Co. v. Fed. Trade Commission, 42 F.(2d) 430, this day delivered.

the retailer clearly understands the use of laminated woods. Nor, if the tags follow the invoices and state that the article is "mahogany," have the petitioners reasonable ground for believing that such marking has a tendency to deceive, cheat, or defraud. To us it implies no such result. To all but the grossly uninformed of the public it has no such tendency. It does not reasonably follow that, even as to this small fraction of the uninformed, the ignorance and mistake, which results in their getting a better article,—a more beautiful, more durable and more serviceable piece of furniture,—should be characterized as deception, fraud, or even unfairness; or that injury to the public interest is thereby shown.

▇ Again, the remedy and order to cease and desist should be appropriate to avoid the evil, if any such exists. For the manufacturer and wholesaler to mark furniture as "veneered" in its catalogues and invoices, if any stigma could possibly attach to the word, would in no degree assure the public that the retailer would also use the word "veneered," or would not simply, as theretofore, label the furniture upon the floor, as "walnut" or "mahogany." Not only is the order of the Commission wholly unsupported by the evidence, but it is inappropriate to remedy the alleged evil. It is an interference with freedom of action on the part of petitioners of which they may justly complain. Federal Trade Commission v. SinClair Co., 261 U. S. 463, 476, 43 S. Ct. 450, 67 L. Ed. 746.

For the reasons stated, such order is set aside and held for naught.