## NORTHAM WARREN CORPORATION v. FEDERAL TRADE COMMISSION.

### No. 300.

Circuit Court of Appeals, Second Circuit.
June 6, 1932.

Breed, Abbott & Morgan, of New York City (Dana T. Ackerly and Edward A. Craighill, Jr., both of New York City, of counsel), for petitioner.

Robert E. Healy, Chief Counsel, Federal Trade Commission, Martin A. Morrison, Asst. Chief Counsel, and Richard P. Whiteley, all of Washington, D. C., for respondent.

Blake & Voorhees, of New York City, (Clinton H. Blake, Jr., and Miner W. Tuttle, both of New York City, of counsel), amicus curiæ.

Covington, Burling & Rublee, of Washington, D. C. (J. Harry Covington and Dean Acheson, both of Washington, D. C., and H. Thomas Austern, of New York City, of counsel), for Standard Brands.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This is a petition to review an order of the Federal Trade Commission of December 14, 1931, ordering the petitioner to cease and desist in its advertising and use of testimonials and indorsements of its toilet articles and preparations, for which testimonials or indorsements the petitioner has paid substantial sums of money without disclosing that fact in the advertisements. The petitioner concedes that it paid to certain well-known persons of the theatrical and social life of the community substantial sums for consent to use their testimonials with their signatures thereto. The statements contained in the tes-

timonials, the Commission expressly found, were truthful expressions of opinion of and concerning petitioner's products. They accurately set forth the opinion of each of the several authors of the testimonials or recommendations. The Commission, however, found that the failure to disclose that the petitioner paid substantial sums of money to the persons named for the testimonials "has the capacity and tendency to mislead and deceive the ultimate purchasers of said preparations into the erroneous belief that said testimonials are entirely voluntary and unbought, and tends to and does divert trade from competitors who do not use purchased testimonials in advertising their products."

The petitioner is a New York corporation engaged in manufacturing toilet articles, and particularly preparations for the care of finger nails and cuticle which are sold under the trade name of "Cutex." These preparations are sold in interstate commerce through jobbers and retailers. It has an annual sales volume of between two and three million dollars.

The question is therefore presented whether Congress has conferred upon the Federal Trade Commission jurisdiction, in the interest of the public, to prohibit as an unfair method of competition, tending to create a monopoly or unduly to restrain trade, the use of admittedly truthful testimonials, unless accompanied by a statement that payment has been made for their use.[1] There is no claim of misbranding, falsity, or insufficiency in the statement labeling the product. In such case action by the Commission would be justified under the provisions of the act, for such would be deception necessarily tending to promote unfair competition with those who were selling the true article as the genuine product. Federal Trade Comm. v. Eastman Kodak Co., 274 U. S. 619, 47 S. Ct. 688, 71 L. Ed. 1238; Federal Trade Comm. v. Western Meat Co., 272 U. S. 554, 47 S. Ct. 175, 71 L. Ed. 405; Berkey & Gay Furniture Co. v. Federal Trade Comm., 42 F.(2d) 427 (C. C. A. 6). The quality of the petitioner's products is not brought into question; nor is there a charge that its products were inadequately labeled or so testified to, by testimonials, as to induce the public to purchase from it under practices of deception. The indorsements are said to be neither exaggerations nor un-

truthful. There is no claim of monopoly. It would seem, therefore, that there was no violation of the Sherman Anti-Trust Act (15 USCA §§ 1–7, 15), or Clayton Act (38 Stat. 730). While the testimonials, if having merit, may tend to increase the volume of business, still, if an honest opinion is expressed under the signature of the giver of such testimonial, the public cannot be presumed to be induced to purchase the petitioner's products in any way or manner that might be said to tend to divert trade from competitors who do not use testimonials in advertising their products. It is doubtful if the public is gullible enough to believe that such testimonials are given without compensation. But, if they are paid for, providing they are truthful, no one is deceived.

Section 5 of the Federal Trade Commission Act (U. S. C. title 15, § 45 [15 USCA § 45], 38 Stat. 717) was recently considered by the Supreme Court in Federal Trade Comm. v. Raladam Co., 283 U. S. 643, 51 S. Ct. 587, 589, 75 L. Ed. 1324, where the court pointed out that the act was supplementary to the Sherman Anti-Trust Act and the Clayton Act (Federal Trade Comm. v. Beech Nut Co., 257 U. S. 441, 42 S. Ct. 150, 66 L. Ed. 307, 19 A. L. R. 882), and said: "The object of the Trade Commission Act was to stop in their incipiency those methods of competition which fall within the meaning of the word 'unfair.' * * * In a case arising under the Trade Commission Act, the fundamental questions are whether the methods complained of are 'unfair,' and whether, as in cases under the Sherman Act, they tend to the substantial injury of the public by restricting competition in interstate trade and 'the common liberty to engage therein.' The paramount aim of the act is the protection of the public from the evils likely to result from the destruction of competition or the restriction of it in a substantial degree, and this presupposes the existence of some substantial competition to be affected, since the public is not concerned in the maintenance of competition which itself is without real substance. Compare International Shoe Co. v. Fed. Trade Comm., 280 U. S. 291, 297–299, 50 S. Ct. 89, 74 L. Ed. 431."

The Supreme Court, referring to the words "unfair method of competition," said in Federal Trade Comm. v. Gratz, 253 U. S. 421, at page 427, 40 S. Ct. 572, 575, 64 L. Ed. 993: "They are clearly inapplicable to practices never heretofore regarded as opposed to good morals because characterized by deception, bad faith, fraud, or oppression, or as against public policy because of their dan-

[1] New York Civil Rights Law (art. 5, § 50 [Consol. Laws N. Y. c. 6]) forbids any firm or corporation to use, for advertising purposes or for the purposes of trade, the name, portrait, or picture of any living person without having first obtained the written consent of such person; such use, without consent, is a misdemeanor.

gerous tendency unduly to hinder competition or create monopoly."

The Federal Trade Commission Act (15 USCA §§ 41–51) does not purport to establish a decalogue of good business manners or morals. Its purpose is to strike down at their inception practices which are unfair and which, if permitted to run their full course, would result in the creation of a monopoly and an undue restraint of trade. Even if a practice may be regarded as unethical, it would still be beyond the purview of the act if it lacks the public interest necessary to support the Commission's jurisdiction. Federal Trade Comm. v. Klesner, 280 U. S. 19, 50 S. Ct. 1, 74 L. Ed. 138, 68 A. L. R. 838. The Commission does not suggest that these testimonials tend to create a monopoly; they do not have a tendency to create an undue restraint of trade. The strongest argument the respondent makes is that failure to state the price paid for the testimonial amounts to deception and misrepresentation concerning the petitioner's product and in that way the petitioner is able to deprive honest manufacturers of a market. Federal Trade Comm. v. Winsted Hosiery Co., 258 U. S. 483, 42 S. Ct. 384, 66 L. Ed. 729. But where unlawful restraint of trade has been ordered to be discontinued it has always appeared that there was some dishonesty in labeling or marketing the goods. Federal Trade Comm. v. Winsted Hosiery Co., supra; Guarantee Veterinary Co. v. Federal Trade Comm., 285 F. 853 (C. C. A. 2); Royal Baking Powder Co. v. Federal Trade Comm., 281 F. 744 (C. C. A. 2); Procter & Gamble v. Federal Trade Comm., 11 F.(2d) 47 (C. C. A. 6). In order that the Commission proceed in the public interest, the courts have insisted not only upon a showing that the practice is unfair and disapproved, but also that the public are misled thereby. Federal Trade Comm. v. Klesner, supra.

The use of testimonials, which are truthfully stated under the signature of the giver, cannot in any sense be regarded as unfair competition or as involving a tendency to restrain competition unduly, and the Commission was without jurisdiction to interfere. In New Jersey Asbestos Co. v. Federal Trade Comm., 264 F. 509, this court held that a long-standing practice of entertainment of buyers and employees of customers, such as furnishing liquor, cigars, meals, and theater tickets, is not an unlawful practice giving the Commission jurisdiction to act. In Ostermoor & Co. v. Federal Trade Comm., 16 F. (2d) 962, 964, 51 A. L. R. 327, we held that an advertisement showing a picture of a mattress uncovered at one end and extending to a surprising degree, exaggerating the actual thickness and resiliency of the layers, was not an unfair method of competition. We said: "In our judgment, this pictorial representation of the process of manufacturing Ostermoor mattresses and of the materials used therein, even though exaggerated as to their characteristics, cannot deceive the average purchaser. * * * There is no basis for the finding that 'substantial numbers of purchasers had been misled and deceived by the grossly exaggerated pictorial representation.' "

Because a prominent person ventures an opinion without being requested to do so is no guaranty either of veracity or good judgment. If the testimonials involved here represent honest beliefs of the indorsers, there is no misrepresentation concerning the product, and no unfair competition is created. We have no right to presume that indorsers of commercial products falsify their statements because they have received compensation. There are no misrepresentations, and the Commission was without jurisdiction.

Order reversed.