# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-888

SIMONE B. GUILLORY

VERSUS

SAMUEL S. BROUSSARD, JR. AND
SAM BROUSSARD TRUCKING CO., INC.

**\*\*\*\*\*\*\*\*\*\***
## APPEAL FROM THE
## SIXTEENTH JUDICIAL DISTRICT COURT
## PARISH OF IBERIA, DIVISION F, NO. 119923
## HONORABLE EDWARD M. LEONARD, JR., DISTRICT JUDGE
**\*\*\*\*\*\*\*\*\*\***

## SYLVIA R. COOKS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Jimmie C. Peters and James T. Genovese, Judges.

**Genovese, J. concurs in the result.**

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART, REMANDED.**

Philip A. Franco
Lauren Lopresto Tafaro
Diana Cole Suprenant
Adams and Reese LLP
4500 One Shell Square
701 Poydras Street
New Orleans, LA 70139
(504) 581-3234
**ATTORNEYS FOR PLAINTIFF/APPELLANT:**
  **Simone B. Guillory**

Donald W. Washington
Justin J. Marocco
Jones Walker LLP
8555 United Plaza Blvd., 5th Floor

Baton Rouge, LA  70809-7000
(225) 248-2415
**ATTORNEYS FOR DEFENDANTS/APPELLEES:**
  **Samuel S. Broussard, Jr. and Sam Broussard Trucking Co., Inc.**

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

Simone B. Guillory (Plaintiff) and Sammy Broussard, Jr. (Defendant) are two of four siblings who own a trucking company started by their father and mother many years ago. The four siblings were left equal ownership of the company upon the death of their parents. After Sammy Broussard, Sr.'s death in 1995, the company continued under the leadership of Defendant as President of the company with all four children serving on the Board of Directors, all four sharing equally in the profits of the company, and all enjoying equal ownership of the immovable assets. By 2003, the company was becoming more profitable. Defendant attributed this success to his personal efforts as President. No longer satisfied with sharing equally in the operation and profits of the company, Defendant informed his three sisters that unless each agreed to sell him fifteen percent of their stock, thereby giving him a seventy per cent majority interest ownership, he would no longer serve as President and would leave the company. He assured his sisters they would continue to exercise control over the family business by remaining on the Board of Directors along with him. Additionally, he acknowledged that his sisters would not be giving up any of their ownership interest in the immovable assets of Sam Broussard Trucking Company, Inc. (SBT) and thus he agreed to transfer the immovable property upon which the SBT office was located. None of the sisters believed they were capable of running the company and expressed their satisfaction with Defendant's successful handling of the business. Plaintiff and her two sisters agreed to Defendant's proposal as they understood it.

In 2003, the four siblings appeared at SBT's office to complete the sale of

the three sisters' stock to their brother. Although the Articles of Incorporation of SBT required the Board of Directors fix the value of the stock, Defendant assigned the stock value without the Board's participation. Instead of purchasing his sisters' stock as agreed, Defendant presented them with a Stock Redemption Agreement through which their stock would be redeemed by SBT at the company's expense. As a result, Defendant obtained a majority interest in the family company at no cost to himself. Plaintiff and her sisters paid themselves for their stock with their own company money.

Plaintiff maintained she did not understand the Redemption Agreement but trusted she could rely on her brother's representations. She was not represented by a lawyer and has no legal experience. She signed the Stock Redemption Agreement and received a check from SBT in payment for her stock believing Defendant had made a loan from the company to purchase the stock, which he would repay. She maintained she did not understand that Defendant was acquiring a seventy percent interest in the family-owned company at no cost to himself. In accordance with the agreement between Plaintiff and Defendant, she and her sisters remained on the Board of Directors after execution of the agreement for several more years, receiving a monthly check for their services. Approximately three years after signing the Stock Redemption Agreement all four siblings began receiving equal rental payments from SBT for the use of the building.

Beginning in 2004, Defendant, as majority shareholder of SBT, began paying himself increased compensation without the knowledge or approval of his sisters or the Board of Directors. In 2004, Defendant paid himself as President of SBT $453,741 in wages which he increased to $675,945 in 2005 and to $884,270 in 2006. In 2006 he also paid himself a bonus of $900,000, bringing his total

compensation for that year to almost $1.8 million dollars. Over the course of the next four years Defendant paid himself as President of SBT what he characterized as wages and bonuses as follows: $1,128,107 in 2007; $1,165,278 in 2008; $682,207 in 2009; $1,109,515 in 2010; and in 2011, he paid himself $1,017,400 in salary and commissions, a bonus of $400,000, a $210,000 distribution as a shareholder, plus a Director's fee of $6,000 for the year. Because these funds were paid to Defendant as compensation it resulted in Defendant receiving one hundred percent of some of the company's profits during these years rather than the seventy percent reflected by his stock ownership interest. These payments, made without board approval, also resulted in a substantial loss to the remaining stockholders including Plaintiff. Defendant did not provide any financial statements to his sisters showing his compensation for these years and they remained unaware that such sums were being paid by SBT to Defendant as compensation.

By 2007, Defendant realized, and candidly admitted to his sisters, it would inure to his personal tax benefit to convert SBT from a Subchapter C Corporation to a Subchapter S Corporation (S Corporation) for federal income tax purposes, because he was receiving such large sums from the company as income. To induce his sisters to agree to convert SBT to an S Corporation Defendant promised them he would make annual distributions of profit from SBT in an amount sufficient for each shareholder to pay their increased tax burden resulting from the company's income imputed to each of them because of the company's new S Corporation tax status. Plaintiff and her sisters agreed to the conversion of SBT to an S Corporation. Thereafter, SBT, by authority of Defendant as President and controlling shareholder, made annual distributions of SBT's profits sufficient for each shareholder to pay their increased taxes until 2011.

Plaintiff's sister, Michelle Cart, works in the corporate office for SBT. She repeatedly urged her sisters to request copies of SBT's financial statements. When first asked to provide his sisters with SBT's financial statements, Defendant responded by promising to "think about" their request. The information was never forthcoming. The matter came to a head in May of 2011, when all three sisters made a formal written request for financial statements invoking the provisions of La.R.S. 12:103 effective at that time. Rather than comply with the written request, Defendant threatened his sisters and warned of dire consequences for the shareholders if they did not retract their request for disclosure of SBT's financial information. Defendant threatened to remove the three sisters from the Board of Directors and singled out Ms.Cart by telling her she would not only be removed as a Director, but she would also lose her job with SBT. Ms. Cart acquiesced immediately and withdrew her demand for access to SBT's financial records. Defendant informed Ms. Cart her job was now secure and she would remain a Director. Plaintiff and her other sister, Lamar Lopresto, continued to press their demands. Plaintiff further reminded Defendant it had been two years since she demanded to see the financial records of SBT and reminded him that all employee salaries at SBT were to be set by the Directors.

On September 1, 2011, Defendant, voting his controlling seventy percent stock shares, removed Plaintiff and Lopresto from the Board of Directors of SBT and replaced them with his children. He then voted to raise the monthly compensation of Directors to five hundred dollars. Additionally, SBT stopped paying monthly rent to the sisters for SBT's use of the co-owned property on which the offices are located, asserting for the first time that the immovable property belonged to the corporation. Defendant also refused to make any

4

distribution of profit from SBT for twenty-one months. As a result, Plaintiff was unable to pay her annual taxes based on the imputed income from SBT for 2011 without making a loan. After Defendant received notice of Plaintiff filing suit in 2012, SBT made a distribution of profits to its shareholders. Plaintiff claimed in her amended and supplemental petition that Defendant violated the Louisiana Unfair Trade Practices Act (LUTPA), La.R.S. 51:1401-1428, by withholding distribution of any profits unless and until Plaintiff dismissed her suit.

The jury entered its verdict in the form of answers to twelve interrogatories. Despite the jury finding that Plaintiff's excusable error vitiated her consent to the Stock Redemption Agreement it did not vote to rescind the Stock Redemption Agreement between the parties and failed to provide any remedy to Plaintiff for her loss. The jury further found Defendant promised to pay Plaintiff annual distributions from SBT's profits sufficient to pay her taxes on the income automatically attributed to her for the periods after SBT converted to an S Corporation. It further found Defendant breached that promise by refusing to make such a distribution after Plaintiff filed her suit against him. As a result of his failure to do so, the jury found, Defendant engaged in unfair methods of competition and unfair or deceptive methods or practices in derogation of LUTPA, and awarded Plaintiff damages for unfair trade practices in the amount of $69,084.00, plus judicial interest from January 10, 2014, and for all costs of the proceedings. The jury was not instructed on the general law of contract and therefore did not consider Plaintiff's entitlement to recover damages as provided by other provisions of Louisiana law.

The trial court rendered judgment in conformity with the jury's findings and awarded Plaintiff attorney fees in accordance with La.R.S. 51:1409(A), the amount

5

of such fees to be determined at a later date following the submission of evidence and argument presented by a Rule to Show Cause, with such fees to bear judicial interest from the date the amount is decided. Plaintiff filed a Motion for Judgment Notwithstanding the Verdict or for New Trial and Defendant and SBT filed a Motion for Judgment Notwithstanding the Verdict. Both motions were denied with costs for the motions equally split between the parties. Plaintiff, Defendant and SBT appeal the trial court judgment and its denial of the respective Motions for Judgment Notwithstanding the Verdict.

## ASSIGNMENTS OR ERROR

Plaintiff assigns four errors, to wit:

1. The trial court committed reversible error pursuant to La.Civ. Code Art. 1813(D) by entering judgment on the general verdict denying rescission of the sale of Ms. Guillory's stock, which was inconsistent with the jury's answers to written interrogatories finding her error was not caused by her inexcusable ignorance, neglect, or want of care.

2. The trial court replicated its reversible error by disregarding the jury's answers to written interrogatories that Ms. Guillory's error was not caused by her inexcusable ignorance, neglect, or want of care and by refusing to enter judgment in accordance with the jury's answers notwithstanding the inconsistent general verdict.

3. The trial court committed reversible error by refusing to grant a new trial pursuant to La. Code of Civ. Proc. Art. 1972(1) and La. Code of Civ. Proc. Art. 1992 because the jury verdict denying rescission for Ms. Guillory's error not caused by her inexcusable ignorance, neglect, or want of care was clearly contrary to the law instructed by the Court and facts found by the jury, and denies her any remedy, resulting in a miscarriage of justice.

4. The trial court erred in denying a motion for judgment notwithstanding the verdict or new trial to invalidate the entire Stock Redemption Agreement because uncontroverted evidence showed that it was not done pursuant to the Articles of Incorporation of SBT.

6

Defendant and SBT assign five assignments of error all relating to their assertion that the trial court erred in finding Defendant violated LUTPA and in awarding damages, costs and attorney fees for such violation. The defendants further assert the trial court erred in denying their Motion for Judgment Notwithstanding the Verdict based on the inapplicability of LUTPA to Defendant's actions.

## STANDARD OF REVIEW

We review the jury's findings of fact under the manifest error standard of review:

> In accordance with well-established law, much discretion is left to the judge or jury on determinations of fact. *Guillory v. Lee,* 09–0075, p. 14 (La.6/26/09) 16 So.3d 1104, 1116; *Wainwright v. Fontenot,* 00–0492, p. 6 (La.10/17/00), 774 So.2d 70, 74.

> > [T]he reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.

> *Guillory,* 09–0075 at p. 14, 16 So.3d at 1116–17 (quoting *Perkins v. Entergy Corp.,* 00–1372 (La.3/23/01), 782 So.2d 606). An appellate court, in reviewing a jury's factual conclusions, must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong. *Kaiser v. Hardin,* 06–2092, pp. 11–12 (La.4/11/07), 953 So.2d 802, 810; *Guillory v. Insurance Co. of North America,* 96–1084, p. 5 (La.4/8/97), 692 So.2d 1029, 1032. The issue to be resolved on review is not whether the jury was right or wrong, but whether the jury's fact finding conclusion was a reasonable one. *Rosell v. ESCO,* 549 So.2d 840, 844 (La.1989); *Canter v. Koehring Co.,* 283 So.2d 716, 724 (La.1973).

Notably, reasonable persons frequently disagree. *Guillory,* 09–0075 at pp. 15–16, 16 So.3d at 1117. However, where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Rosell,* 549 So.2d at 844. "[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Canter,* 283 So.2d at 724. Simply stated:

> When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

*Rosell,* 549 So.2d at 844–45 (citations omitted).

*Peironnet v. Matador Res. Co.*, 12-2292, 12-2377, pp. 34-35 (La. 6/28/13), 144

So.3d 791, 817-18 (alterations in original) (footnote omitted).

## JURY'S FACTUAL FINDINGS

At the outset, we find the record supports the jury's findings of fact. Plaintiff's testimony regarding Defendant's promise to make annual distributions of corporate profits sufficient to pay her tax liability resulting from her imputed income as a shareholder of SBT is corroborated by Defendant's own testimony. It is also corroborated by Ms. Cart's testimony and other evidence submitted. Thus we find no manifest error in the jury's findings of fact regarding Defendant's promise to make such annual distributions and its finding that he breached that

promise. While we agree with Defendant that the evidence regarding his breach of this promise does not support a claim under LUTPA as the jury concluded, this finding does not compel rejection of Plaintiff's claim altogether. The jury's answers to interrogatories clearly demonstrate they were convinced Defendant promised Plaintiff he would make annual distributions sufficient to pay her income tax obligation. They were also convinced Defendant made such annual distributions for several years but stopped doing so after Plaintiff filed suit against him as a means of coercing her to drop her lawsuit.

Further, the jury expressly found Plaintiff's cause for consenting to the Stock Redemption Agreement was twofold: (1) she would remain a member of the Board of Directors at all times and (2) she would be entitled to a twenty-five percent ownership to all real estate owned by SBT if she executed the agreement. These factual findings by the jury were based upon the jury's determinations as to the credibility of the witnesses who testified at trial, a determination we will not disturb absent manifest error. The jury clearly found Plaintiff's error in consenting to the Stock Redemption Agreement was not caused by her "inexcusable ignorance, neglect or want of care." The jury also determined that Plaintiff's error was "a cause or reason without which Simone B. Guillory would not have executed the Stock Redemption Agreement."

A review of the record reveals compelling testimony by both Plaintiff and Defendant supporting the jury's findings of fact. Plaintiff's testimony regarding her causes for entering into the Stock Redemption Agreement with her brother is corroborated by his own testimony and that of their sister, Ms. Cart. Ms. Cart testified, when the three sisters agreed to sell Defendant enough stock to give him voting control of SBT, he gave his word that all three would remain on the Board

9

of Directors. Likewise, Defendant testified, at the time the Stock Redemption Agreement was discussed, he told his three sisters they would remain on the Board of Directors. Additionally, he testified his three sisters remained on the Board for eight years after they signed the Stock Redemption Agreement in 2003, until he removed them in 2011. The jury's finding that this was a cause for Plaintiff entering into the Stock Redemption Agreement is well supported by the record and is certainly not manifestly erroneous.

Defendant also testified SBT began paying rent to each sibling in 2006, for use of the immovable property at a monthly rate of $500.00. He admitted that each sibling owns an equal share in the property but attempted to explain that the property was not transferred into each sibling's name in order to avoid negative tax consequences for all four siblings. Nothing in his testimony contradicts Plaintiff's assertion that retention of her one-fourth ownership interest in the immovable property on which SBT's offices are located was also a cause for entering the Stock Redemption Agreement.

## JURY INSTRUCTIONS

The trial court explained to the jury that Plaintiff asserted two causes of action. One for "rescission of the Stock Redemption Agreement" and the other for Defendant's alleged violation of the Louisiana Unfair Trade Practices Act. We find the trial court committed legal error in instructing the jury regarding LUTPA, as opposed to instructing them on the laws pertaining to contract, a claim set forth in Plaintiff's second amended complaint which specifically stated:

> SAMUEL S. BROUSSARD, JR. promised the shareholders that annual distributions would be made to them in order for the shareholders to pay federal and state income taxes incurred by the shareholders as a result of income recognized by them from Sam Broussard Trucking, Co., Inc.

10

When Sam Broussard Trucking Co., Inc. was converted to a Chapter S corporation in 2007, Defendant SAMUEL S. BROUSSARD, JR., as President and a member of the Board of Directors of Sam Broussard Trucking, Co., did make the distributions as promised from 2007 to 2010 to the shareholders for them to pay the income taxes incurred by them from income received from Sam Broussard Trucking, Co., Inc.

SAMUEL S. BROUSSARD, JR., as President and a member of the Board of Directors of Sam Broussard Trucking Co., intentionally refused, in bad faith, to make a distribution to the shareholders as promised for them to pay income taxes incurred by them for income received from Sam Broussard Trucking Co., Inc. in 2011 and 2012 in order to coerce Plaintiff to settle legal disputes with the Defendants . . . .

As a result of the refusal to make a distributions [sic] to cover income taxes for income from Sam Broussard Trucking Co., Inc., Defendant, SAMUEL S. BROUSSARD, JR., as President and a member of the Board of Directors, intentionally breached his promise and fiduciary duties to the minority shareholders and is personally liable to Plaintiff, as shareholder, for said breaches.

As a result of the intentional breaches of his promise and fiduciary duties, Defendant, SAMUEL S. BROUSSARD, JR. is personally liable to Plaintiff for the income taxes she was required to pay for income from the corporation.

As a result of the intentional breaches of his promise and fiduciary duties, Defendant, SAMUEL S. BROUSSRD, JR. is personally liable to Plaintiff, SIMONE B. GUILLORY, for any interest on the loan she was required to make to pay the 2011 and any other income taxes for income from Sam Broussard Trucking Co., Inc.

As a result of the intentional breaches of his promise and fiduciary duties, Defendant, SAMUEL S. BROUSSARD, JR. is personally liable to Plaintiff for any other damages and losses sustained as a result of his refusal to make a distribution for her to pay the income taxes for income from Sam Broussard Trucking Co., Inc.

Thus, Plaintiff alleged facts which if proved would entitle her to recovery for breach of contract. No instructions were given concerning Louisiana's general contract law. Instead, the jury was instructed only on Louisiana law regarding

11

LUTPA. We find these erroneous jury instructions misled and confused the jury to such an extent that it prevented the jury from dispensing justice. We note:

> *La. C.C.P. art. 1792(B) requires a district judge to instruct the jury on the law applicable to the cause submitted to them.* "The trial court is responsible for reducing the possibility of confusing the jury and may exercise the right to decide what law is applicable and what law the trial court deems inappropriate." *Adams v. Rhodia, Inc.,* 2007–2110 p. 5–6 (La.5/21/08), 983 So.2d 798, 804. Considering the complexity and number of issues for the jury to decide in this case, the district judge determined from the outset she wanted to simplify the instructions and interrogatories for the jury's consideration. The question here is whether the district judge adequately instructed the jury, as that concept has been defined by this court:

> > [a]dequate jury instructions are those which fairly and reasonably point out the issues and which provide correct principles of law for the jury to apply to those issues. The trial judge is under no obligation to give any specific jury instructions that may be submitted by either party; *the judge must, however, correctly charge the jury.* If the trial court omits an applicable, essential legal principle, its instruction does not adequately set forth the issues to be decided by the jury and may constitute reversible error.

> *Adams,* 2007–2110 p. 6, 983 So.2d at 804.

> Generally, "the giving of an allegedly erroneous jury instruction will not constitute grounds for reversal unless the instruction is erroneous and the complaining party has been injured or prejudiced thereby." *Rosell,* 549 So.2d at 849. In fact, Louisiana jurisprudence is well established that a reviewing court must exercise great restraint before it reverses a jury verdict due to an erroneous jury instruction. *Adams,* 2007–2110 p. 6, 983 So.2d at 804; *Nicholas,* 1999–2522 p.8, 765 So.2d at 1023. We have previously explained the following basis for this rule of law:

> > [t]rial courts are given broad discretion in formulating jury instructions and a trial court judgment should not be reversed so long as the charge correctly states the substance of the law. The rule of law requiring an appellate court to exercise great restraint before upsetting a jury verdict is based, in part, on respect for the jury determination rendered by citizens chosen from the community who serve a valuable role in the judicial system. We assume a jury will not disregard its sworn duty and be improperly motivated. We assume a jury will

12

> render a decision based on the evidence and the totality of the instructions provided by the judge.

*Adams,* 2007–2110 p. 6, 983 So.2d at 804; *see also Nicholas,* 1999–2522 p. 8, 765 So.2d at 1023. *When a reviewing court finds the jury was erroneously instructed and the error probably contributed to the verdict, an appellate court must set aside the verdict. Adams,* 2007–2110 p. 6, 983 So.2d at 804; *Nicholas,* 1999–2522 p. 8, 765 So.2d at 1023.

> . . . .

> The ultimate inquiry on appeal is whether the jury instructions misled the jury to such an extent that the jurors were prevented from dispensing justice. *Adams,* 2007–2110 p. 7, 983 So.2d at 804; *Nicholas,* 1999–2522 p.8, 765 So.2d at 1023.

*Wooley v. Lucksinger*, 09-571, 09-584, 09-585, 09-586, pp. 81-82 (La. 4/1/11), 61 So.3d 507, 573-74 (alterations in original) (emphasis added).

The trial court only instructed the jury regarding Plaintiff's claim that Defendant violated the LUTPA as follows:

> The Louisiana Unfair Trade Practices Act grants a private cause of action to any person who suffers any ascertainable loss of money or movable property, corporeal of [sic] incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful. The definition of what constitutes an unfair and deceptive trade practice is broad and subjective. The Louisiana Unfair Trade Practices Act leaves particular determinations of what is an unfair or deceptive method, act or practice to be decided on a case by case basis.

> A practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, or unscrupulous. Excuse me, I'll start over with that. A practice is unfair when it offends established public property (sic)—policy—and when the practice is immoral, unethical, oppressive, or unscrupulous.

> Conduct is deemed unlawful if it involves misrepresentation, deception, breach of fiduciary duty, or other unethical conduct. Conduct is also unlawful when persons in a special relationship of trust profit from their wrongdoing.

> The defendant's motivation is a critical factor in determining unfair trade practices.

As I stated earlier, the Louisiana Unfair Trade Practices Act prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.["]

The Louisiana Supreme Court has identified fostering competition as one of the goals of the Louisiana Unfair Trade Practices Act. The other goals of the Louisiana Unfair Trade Practices Act include halting unfair business practices and sanctioning businesses which commit them, preserving and promoting effective and fair competition, and curbing business practices that lead to a monopoly and unfair restraint of trade within a certain industry. Additionally, the Supreme Court has clarified that any person can bring an action under the Louisiana Unfair Trade Practices Act, not just business competitors or consumers.

However, the Unfair Trade Practices Act does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions. The statute does not forbid a business to do what everyone knows a business must do; make money. Businesses in Louisiana are still free to pursue profit, even at the expense of competitors, so long as the means used are not egregious.

Finally, the statute does not provide an alternate remedy for simple breaches of contract. There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes.

If you find that Defendants have committed an unfair or deceptive act or practice against Simone B. Guillory and that Simone B. Guillory suffered an ascertainable loss of money or moveable property as a result, then Simone B. Guillory is entitled to recover from defendants under the Louisiana Unfair Trade Practices Act.

Absent from the jury instructions was any information or any reference to Louisiana general contract law; and, more specifically, to La.Civ.Code art. 1952, a failure we will address in due course. The trial court's jury instructions led the jury to understand that if it found as fact that Defendant broke his promise to make annual distributions of profit and that his motivation for doing so was to coerce Plaintiff to drop her lawsuit against him it should find he violated LUTPA. This simply is not the law applicable to the facts presented in evidence and pled. While Plaintiff asserted that Defendant's alleged action of refusing to make the promised

distributions in an effort to coerce Plaintiff to drop her lawsuit constituted a violation of LUTPA such assertions by Plaintiff in her petition for relief does not determine the law applicable to the case. We have said:

> Louisiana has chosen a system of fact pleading. La. C.C.P. art. 854 cmt. (a); *Montalvo [v. Sondes*, 93-2813,] p. 6 [(La. 5/23/94),] 637 So.2d [127,] 131. **Therefore it is not necessary for a plaintiff to plead the theory of his case in the petition**. *Kizer v. Lilly*, 471 So.2d 716, 719 (La.1985).

*St. Landry Homestead Fed. Sav. Bank v. Vidrine*, 12-1406, p. 4 (La.App. 3 Cir. 6/12/13), 118 So.3d 470, 475 (emphasis added), *writs denied*, 13-2218, 13-2219 (La. 12/2/13), 126 So.3d 1283.

Regardless of Plaintiff's allegations in her petition, and, regardless of Plaintiff's requested jury instructions, it is the court's duty to "instruct the jury on the law applicable to the cause submitted to them." *Wooley*, 61 So.3d at 573. The applicable law in this case on which the jury should have been instructed was Louisiana's general law on contracts including the law regarding breach of contract.

Turning next to Plaintiff's claim for rescission of the Stock Redemption Agreement, we find the trial court again failed to give proper jury instructions which misled the jury and resulted in it erroneously deciding not to grant Plaintiff any relief despite its finding that Plaintiff's excusable error vitiated consent to the Stock Redemption Agreement. The court instructed the jury regarding Plaintiff's claim for rescission. In the course of these instructions the trial court informed the jury that if they found the contract should be vitiated for lack of consent then the contract is "deemed never to have existed." The court continued its instructions to the jury explaining that if the jury determines the contract never existed then "[t]he parties must be returned to the situation that existed before the contract was made,

15

including restoration of fruits and revenues the party would have received if the contract had not existed." Following these instructions the trial court instructed the jury as to the damages Plaintiff is entitled to recover:

(1) In the event the jury should find that the Plaintiff has proved her claim for rescission of the agreement, you may award damages as any distributions to which she would have been entitled had she not entered into the agreement, less those distributions actually received;

(2) In the event the jury should find that the Plaintiff has proved her claim of Unfair Trade Practices, you may award as damages the amount of income taxes that has been proven that she was required to pay for income received from the corporation for those years in which sufficient distributions were not made, plus interest or interest lost as a result; actual damages including general damages for mental pain and anguish, all costs of these proceedings and attorney fees.

These instructions failed to address a key provision in Louisiana law regarding rescission, namely La.Civ.Code art. 1952, which states:

> A party who obtains rescission on grounds of his own error is liable for the loss thereby sustained by the other party unless the latter knew or should have known of the error.

> The court may refuse rescission when the effective protection of the other party's interest requires that the contract be upheld. In that case, a reasonable compensation for the loss he has sustained may be granted to the party to whom rescission is refused.

The absence of this instruction left the jury without a clear understanding of the remedies provided by law in accordance with its factual determinations regarding whether the Stock Redemption Agreement should be rescinded, and if not rescinded, would Plaintiff be entitled to "reasonable compensation" for her loss. Left without the proper instructions the jury failed to provide any remedy to Plaintiff which it could not do considering the facts in evidence.

# NO VIOLATION OF LUTPA

As we have stated, the jury committed legal error in finding Plaintiff is entitled to receive damages and attorney fees under the provisions of LUTPA. LUTPA does not apply to Defendant's conduct in this case. The jury's only basis for finding Samuel Broussard, Jr. engaged in "unfair methods of competition" and/or "unfair or deceptive methods, acts or practices in the conduct of any trade or commerce" is its finding that he "refus[ed] to make sufficient distributions of profits to allow Simone B. Guillory to pay her income taxes in order to coerce her to dismiss lawsuits pending against the defendants[.]" Defendant's failure to abide by his contractual agreement with Plaintiff regarding distribution of profits sufficient for Plaintiff to pay her taxes annually in exchange for her agreement to convert SBT to an S Corporation, presents a general breach of contract claim. It does not meet the criteria for finding a special LUTPA violation. Relying on the Louisiana Supreme Court's holding in *Quality Environmental Processes, Inc. v. I.P. Petroleum Co., Inc.,*13-1582, 13-1588, 13-1703 (La. 5/7/14), 144 So.3d 1011, the second circuit in *Carroll Insulation & Window Co., Inc. v. Biomax Spray Foam Insulation, L.L.C.*, 50,112 pp. 6-7 (La.App. 2 Cir. 11/18/15), 180 So.3d 518, held:

> To sustain a cause of action under LUTPA, two things must be proved: (1) an ascertainable loss was suffered; and (2) the loss must result from another's use of unfair methods of competition and unfair or deceptive acts or practices, *Cheramie [Servs., Inc. v. Shell Deepwater Prod. Inc.,* 09-1633 (La. 4/23/10), 35 So.3d 1053]. The statute does not provide an alternate remedy for simple breaches of contract. There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes. *Hardy v. Easterling*, 47,950 (La.App.2d Cir.04/10/13), 113 So. 3d 1178, 1187, *citing, Turner v. Purina Mills, Inc.*, 989 F.2d 1419 (5th Cir.1993).

The Louisiana Supreme Court rejected the plaintiffs' claims in *Quality Environmental Processes, Inc.*, 144 So.3d at 1026, based on defendants' non-

payment of royalties and failure to timely respond to discovery requests because their claims did "not fall under the protection of LUTPA's narrow goal of protecting against egregious actions of fraudulent, deceitful, and unfair business practices to promote and foster healthy and fair business competition." Likewise, Defendant's failure to abide by his contractual agreement to make annual distributions of profit sufficient for Plaintiff to pay her income tax liability for a given year, does not affect "healthy and fair business competition." *Id.* It is a matter strictly between Plaintiff and Defendant. The supreme court took great pains in *Quality Environmental Processes, Inc.* to explain the special purpose of LUTPA which spawns from state legislation inspired by the Federal Trade Commission Act. The court declared that "the two acts share the same goals: to protect consumers and to foster competition." *Id.* at 1025. Defendant's refusal to make distributions of profit annually as agreed in no way affects consumers, nor would the distribution if made foster competition in the marketplace.

> Notably, LUTPA was modeled after the Federal Trade Commission Act (hereinafter "FTC Act"), and the two acts share the same goals: to protect consumers and to foster competition. *See* Andrews, 41 Loy. L.Rev. at 777. Specifically, these goals include halting unfair business practices and sanctioning the businesses which commit them, preserving and promoting effective and fair competition, and curbing business practices that lead to a monopoly and unfair restraint of trade within a certain industry. *See, e.g., Slough v. Fed. Trade Comm'n,* 396 F.2d 870 (5th Cir.1968), *cert. denied,* 393 U.S. 980, 89 S.Ct. 448, 21 L.Ed.2d 440 (1968) ("The aim of the [Act] is to stamp out unfair business practices and businesses which persist in practicing them."); *United States v. St. Regis Paper Co.,* 355 F.2d 688 (2d Cir.1966) (noting that the policy of the FTC Act is to promote and preserve competition); *Northam Warren Corp. v. Fed. Trade Comm'n,* 59 F.2d 196 (2d Cir.1932) ("[The purpose of the Act] is to strike down at their inception practices which are unfair and which, if permitted to run their full course, would result in the creation of a monopoly and an undue restraint of trade.").

*Quality Environmental Processes, Inc.*, 144 So.3d at 1025-26 (alterations in original).

We therefore reverse the trial court finding that Plaintiff is entitled to damages and attorney fees under the provisions of LUTPA.

## BREACH OF CONTRACT CLAIM

Louisiana Civil Code art. 1994 provides:

> An obligor is liable for the damages caused by his failure to perform a conventional obligation.
>
> A failure to perform results from nonperformance, defective performance, or delay in performance.

This court in *Mouton v. Generac Power Systems., Inc.*, 14-350, p. 17 (La.App. 3 Cir. 11/5/14), 152 So.3d 985, 997, held that: "In order to succeed on a breach of contract claim, the plaintiff must prove the existence of a contract, a breach of that contract, and damages."

> The essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee. *See* La. Civ. Code art. 1994; *Favrot v. Favrot,* 10–0986 (La.App. 4th Cir.2/9/11), 68 So.3d 1099, 1108–09, *writ denied,* 11–0636 (La.5/6/11), 62 So.3d 127.

*Denham Homes, L.L.C. v. Teche Fed. Bank*, 14-1576, p. 17 (La.App. 1 Cir. 9/18/15), 182 So.3d 108, 119.

Defendant's action in refusing to make annual distributions of profit, as he customarily did in previous years, sufficient for Plaintiff to pay her income taxes resulting from such profits constituted a breach of contract. The jury expressly found as fact that:

> Samuel S. Broussard, Jr. promised Simone B. Guillory that Sam Broussard Trucking Company, Inc. would annually pay sufficient distributions from the company to pay taxes on the income

19

automatically attributed to her after the corporation was converted to a Subchapter "S" Corporation[.]

The jury also found Defendant refused to make annual distributions of profit sufficient for Plaintiff to meet her tax liability and such refusal resulted in damage to Plaintiff. Additionally, Defendant's motivation for failing to honor his agreement with Plaintiff, to force her to drop her lawsuit against him, clearly demonstrates he breached the agreement in bad faith.

As we stated earlier, Plaintiff's petition and amended petitions sufficiently set forth allegations providing the basis to recover for breach of contract. In Plaintiff's Second Supplemental and Amended Petition for Recission of Contract and Damages, she not only alleged breach of contract, but she also included in her prayer for relief the following:

> [A]warding Simone B. Guillory the amount of income taxes [she was] required to pay for income received from Sam Broussard Trucking Co., Inc. in 2011, 2012 and any other years that he failed to make the promised distributions and any and all interest paid and/or interest lost as a result;
>
> awarding actual damages, including, but not limited to, mental pain and anguish;
>
> awarding any such other damages that Plaintiff may show at trial;
>
> awarding all costs of these proceedings and attorneys' fees in connection herewith;
>
> for all just and equitable relief[.]

Plaintiff sued Defendant Broussard individually and in his capacities as President and Director of SBT alleging he is personally liable to Plaintiff for intentional breach of his promise to pay and for breach of his fiduciary duties to her. A shareholder does not generally have a right to sue personally for losses to the corporation occasioned by an Officer/Director's breach of fiduciary duty.

20

However, when the Officer or Director's breach of fiduciary duty causes a "direct loss to the shareholder, but not to the corporation, . . . the shareholder may have a right to sue individually." *Thornton ex rel. Laneco Constr. Systems, Inc. v. Lanehart*, 97-2871, p. 6 (La.App. 1 Cir. 12/28/98), 723 So.2d 1127, 1131, *writ denied*, 99-0177 (La. 3/19/99), 740 So.2d 115, *citing Wilson v. H.J. Wilson Co., Inc.*, 430 So.2d 1227 (La.App. 1st Cir.), *writ denied*, 437 So.2d 1166 (1983). Moreover:

> The fiduciary cannot take advantage of his position for his personal benefit to the detriment of the corporation or its shareholders. *Olinde v. 400 Group,* 95-1233 (La.App. 1st Cir.12/6/96), 686 So.2d 883, 885, *writ denied,* 97-0633 (La.5/9/97), 693 So.2d 767. The fiduciary is responsible for proving that his actions were in good faith and that he was guided by inherent fairness to the corporation. *Hirsch v. Cahn Elec. Co., Inc.,* 29,327 La.App. 2nd Cir.5/9/97), 694 So.2d 636, 642, *writ denied,* 97-1561 (La.10/3/97), 701 So.2d 200.

*Id. See also* in accord *Lawly Brooke Burns Trust v. RKR., Inc.*, 96-1231 (La.App. 1 Cir. 3/27/97), 691 So.2d 1349, and cases cited therein.

The evidence clearly shows, as the jury found, Defendant refused to make an annual corporate distribution to Plaintiff solely for his personal benefit, i.e. to force Plaintiff to drop her lawsuit against him. His refusal to make a distribution to Plaintiff was detrimental to her as it made it necessary for her to obtain a loan with interest to pay her yearly tax obligation caused by the income imputed to her as a result of SBT's S Corporation status. The jury's findings indicate Defendant's action in refusing to make a distribution sufficient to pay Plaintiff's tax liability was not done in good faith nor was it guided by any notion of the best interest of the corporation. Defendant's actions caused a direct loss to Plaintiff, not a loss to the corporation, and Plaintiff therefore has a personal right to relief. Additionally, Defendant Broussard is personally liable for his actions:

21

> "The law is settled that if an officer or agent of a corporation through his fault injures another to whom he owes a personal duty, whether or not the act culminating in the injury is committed by or for the corporation, the officer or agent is liable personally to the injured third person, and it does not matter that liability might also attach to the corporation. Article 2315 Civil Code; *Canter v. Koehring Company*, La., 283 So.2d 716 (1973); . . . ." (Other citations omitted.)

*Donnelly v. Handy*, 415 So.2d 478, 481 (La.App. 1 Cir. 1982).

The trial court determined the amount of damages suffered by Plaintiff as a result of Defendant's failure to make such distributions totaled $69,084.00. We find no manifest error in these factual findings and therefore render judgment herewith in favor of Simone B. Guillory on her breach of contract claim in the amount of $69,084.00, plus legal interest from date of demand until paid. Plaintiff is not entitled to an award of attorney fees on her breach of contract claim.

## LACK OF CONSENT - STOCK REDEMPTION AGREEMENT

The jury found the Stock Redemption Agreement is vitiated for lack of consent due to excusable error.

> "Consent may be vitiated by error, fraud, or duress." La. Civ.Code art.1948. However, "[e]rror vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." La. Civ.Code art.1949; *see also* La. Civ.Code art.1967; La. Civ.Code arts. 1823, 1824, 1826 (1870); Marty et Raynaud, *Droit civil—Les obligations,* Part I, at 111–112 (1962). Cause is the reason why a party obligates himself, and without a lawful cause, an obligation cannot exist. La. Civ.Code arts.1966 and 1967.

*Peironnet*, 144 So.3d at 807 (alteration in original).

We find no manifest error in the jury's findings of fact regarding Plaintiff's cause for entering into the Stock Redemption Agreement; and, its finding that such cause was vitiated for lack of consent resulting from excusable error. However, we do find the jury erred as a matter of law in failing to award any relief to Plaintiff.

22

The jury verdict form indicates at least nine of twelve jurors responded to each interrogatory as follows:

> [Interrogatory No.]1: Do you find that Simone B. Guillory committed an error by executing the Stock Redemption Agreement for either of the following reasons:
>
>> a. Because she was to be a member of the Board of Directors of Sam Broussard Trucking Company, Inc. at all times if she executed the Stock Redemption Agreement?
>>
>>> Yes.
>>
>> b. Because she was to have a 25% ownership in fee title to the real estate owned by Sam Broussard Trucking Co., Inc. if she executed the Stock Redemption Agreement?
>>
>>> Yes.
>
> [Interrogatory No.]2: If you answered "Yes" to either 1A or 1B in Question 1, was the error a cause or reason without which Simone B. Guillory would not have executed the Stock Redemption Agreement?
>
>> Yes.
>
> [Interrogatory No.]3: Do you find that Sam Broussard Trucking Company knew or should have known that Simone B. Guillory committed error by executing the Stock Redemption Agreement for the reason or reasons to which you answered "Yes" in Question 1?
>
>> Yes.
>
> [Interrogatory No.]4: Do you find that Simone B. Guillory's error was caused by inexcusable ignorance, neglect or want of care in consenting to the Stock Redemption Agreement?
>
>> No.
>
> [Interrogatory No.]5: Do you find that the Stock Redemption Agreement and the consequent redemption of Simone B. Guillory's stock should be rescinded and declared null?
>
>> No.
>
> [Interrogatory No.]6: Do you find that Samuel S. Broussard, Jr. engaged in unfair methods of competition and unfair or deceptive

23

methods, acts or practices in the conduct of any trade or commerce by voting for the removal of Simone B. Guillory from the Board of Directors of Sam Broussard Trucking Company, Inc.?

No.

[Interrogatory No.]7: Do you find that Samuel S. Broussard, Jr. engaged in unfair methods of competition and unfair or deceptive methods, acts or practices in the conduct of any trade or commerce by failing to convey to Simone B. Guillory a 25% ownership in fee title to the real estate owned by Sam Broussard Trucking Co., Inc.?

No.

[Interrogatory No.]8: Do you find that Samuel S. Broussard, Jr. promised Simone B. Guillory that Sam Broussard Trucking Co., Inc. would annually pay sufficient distributions from the company to pay taxes on the income automatically attributed to her after the corporation was converted to a Subchapter S Corporation?

Yes.

[Interrogatory No.]9: Do you find that Samuel S. Broussard, Jr. engaged in unfair methods of competition and unfair or deceptive methods, acts or practices in the conduct of any trade or commerce by refusing to make sufficient distributions of profits to allow Simone B. Guillory to pay her income taxes in order to coerce her to dismiss lawsuits pending against the defendants?

Yes.

[Interrogatory No.]10: Do you find that Samuel S. Broussard, Jr. engaged in unfair methods of competition and unfair or deceptive methods, acts or practices in the conduct of any trade or commerce after April 16, 2014?

No.

[Interrogatory No.]11: If your answer to Question No. 5 was "Yes", what amount, if any, do you find should be paid to Simone B. Guillory for rescission of the Stock Redemption Agreement?

Zero.

[Interrogatory No.]12: If your answer to Question 6  7 or 9 was "Yes", what amount, if any, do you find should be paid to Simone B. Guillory for damages resulting from unfair trade practices violations committed by Samuel S[.] Broussard, Jr.?

24

a. For conduct in Question 6: Zero.
b. For conduct in Question 7: Zero.
c. For conduct in Question 9: $69,084.
d. General Damages for mental
   pain and anguish: Zero.

The jury erred in failing to provide the only remedy they were instructed was available to Plaintiff in response to Jury Interrogatory No. 5, given the jury's answers to the other interrogatories. Under the provisions of La.Civ.Code art. 1952, there are, however, two potential remedies available to Plaintiff: 1) rescission of the contract or 2) "reasonable compensation for the loss [she] has sustained" if the court refuses rescission. But the court may only refuse rescission "when the effective protection of the other party's [(Defendant's)] interest requires that the contract be upheld." *Id.* Because the jury was not instructed as to this remedy it made no determination regarding it. We must therefore determine from the record whether this alternate remedy is available under the facts of this case. Given the actions of Defendant set forth herein we can discern no reason for protecting his interest which would preclude rescission of the contract. Moreover, Defendant failed to offer any evidence to prove how or in what manner rescission of the Stock Redemption Agreement will result in his interests being unprotected. Thus, reasonable compensation as a remedy in this case is not an available option.

Having made its factual determinations based on the evidence and the testimony of Plaintiff, Defendant, and other witnesses, it was error for the jury to fail to rescind the Stock Redemption Agreement. This is the remedy to which this Plaintiff is entitled. We note:

> Unlike reformation, which is only available upon mutual error for the explicit purpose of reforming an instrument to reflect the true intent of both parties, rescission is a remedy available for both forms of error, and our code specifically allows for rescission for unilateral error, providing the "party who obtains rescission on grounds of his

25

own error is liable for the loss thereby sustained by the other party *unless the latter knew or should have known of the error.*" La. Civ.Code art.1952. . . .

In determining whether to grant rescission, our courts have considered "whether the error was excusable or inexcusable, a distinction received by modern civilian doctrine," *granting relief when error has been found excusable*, see *C.H. Boehmer Sales Agency v. Russo,* 99 So.2d 475, 477 (La.App.Orl.Cir.1958)

. . . and refusing when error has been found inexcusable, *see* *Watson v. The Planters' Bank of Tennessee,* 22 La.Ann. 14, 14 (1870) . . .

Whether an error is excusable or inexcusable should be determined *in concreto*, that is, according to the circumstances surrounding a particular case, rather than according to an abstract standard. Thus, personal circumstances of the party in error, such as age, experience and profession, are to be taken into account.

*Peironnet*, 144 So.3d at 809-810 (first two emphases added).

The record supports the reasonableness of the jury's finding Plaintiff's error was excusable, considering her age, her lack of business experience, and that she is not a trained professional. The record also supports the jury's finding that Defendant knew of Plaintiff's errors regarding the Stock Redemption Agreement and we cannot say it was manifestly erroneous in so finding. We therefore hold that the Stock Redemption Agreement between Simone B. Guillory and Sam Broussard Trucking Company, Inc. dated July 31, 2003, is hereby rescinded and declared null and void and of no legal effect. Because we declare the Stock Redemption Agreement null and void on other grounds it is not necessary to address Plaintiff's assignment of error regarding SBT's Articles of Incorporation as a basis to invalidate the agreement. We reverse the trial court's denial of Plaintiff's Motion for Judgment Notwithstanding the Verdict insofar as it failed to award Plaintiff the appropriate relief in accordance with the jury's findings. For the reasons set forth above, we also reverse the trial court's denial of Defendant's

Motion for Judgment Notwithstanding the Verdict insofar as the LUTPA claims are concerned. In light of these findings, Plaintiff is restored to her ownership interest in Sam Broussard Trucking Company, Inc. as it existed prior to the Stock Redemption Agreement and to her status as a Board member prior to her improper removal in 2011. We remand the case for further proceedings to determine damages consistent with this opinion.[1] All costs below and on appeal are assessed against Defendant.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART, REMANDED.**

---

[1] We are mindful that Plaintiff was paid a sum of money for her stock in connection with the rescinded agreement. This amount shall serve as an offset against any damages due and owing Plaintiff.